**DEL CASTILLO v. CARR, District Director of Immigration.**

**No. 8903.**

Circuit Court of Appeals, Ninth Circuit.

Dec. 14, 1938.

David C. Marcus, of Los Angeles, Cal., for appellant.

Ben Harrison, U. S. Atty., and Maurice Norcop, Asst. U. S. Atty., both of Los Angeles, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This is an appeal from an order of the District Court of Southern California, Central Division, discharging a writ of habeas corpus sought by appellant, a citizen of the Republic of Mexico, in which he charges that he is illegally held by the appellee under a warrant of deportation.

Specifically the warrant states that appellant (quoting from the warrant) "who entered the United States at San Ysidro, California, in January, 1938, is subject to deportation under section 19 of the Immigration Act of February 5, 1917, being subject thereto under the following provisions of the laws of the United States, towit: The immigration act of 1924, in that at the time of his entry he was not in possession of an unexpired immigration visa; and the immigration act of 1917, in that he entered by means of false and misleading statements, thereby entering without inspection."

The following facts are undisputed:

Appellant is a citizen of the Republic of Mexico. Immediately prior to his entry into the United States at Brownsville, Texas, on December 30, 1937, the appellant had been working on a basis of salary and commissions in Mexico, and there arose a dispute between him and his employer as to the amount of commissions due him. He was a traveling salesman and one of his duties was to collect from customers moneys payable to his employer. He had been allowed to apply money so collected to the payment of his salary and commissions admittedly due him.

According to appellant there was a long delay and unfulfilled promises in adjusting the balance, so he took the initiative and without permission applied his employer's money in his possession to the account between them as he understood it, and with his wife and child, both United States citizens, flew by plane to Brownsville, Texas, arriving there December 30, 1937. There he applied at the United States Immigration and Naturalization office for temporary admission to the United States upon the representation that he was going to visit his father-in-law in Michigan, U. S. A., but he said nothing about his difficulties with his employer. He was admitted under a six months' temporary visitor's permit under § 3(2) of the Immigration Act of 1924, 8 U.S.C.A. § 203(2).

Instead of going to Michigan, he went directly to Los Angeles, Calif., and within the month went to Ensenada, Mexico, where he consulted the American Consul regarding permanent residence in the United States. As he left the United States on this trip he showed his Brownsville permit to United States Government officials at the border and was assured that he could re-enter thereon. On the same day he reentered the United States upon authority of the Brownsville permit.

Appellant first came to the United States in 1921 and spent approximately a year and a half in Rider College, N. J., then returned to Mexico. He again entered the United States in 1926 and remained here until the end of 1934. He worked around Detroit, Michigan, five or six years, and while in the United States married a woman of Polish descent (his present wife). They have one child, William, born January 6, 1930 at Detroit, Michigan.

The facts related in the last paragraph are not material in themselves, but throw light upon appellant's testimony, later to be quoted.

It may be argued that these facts alone if shown at a legal and fair hearing would support the trial judge in dismissing the writ. In the first place, neither the trial judge nor the judges of this court are weighers of the evidence in a proceeding of this kind. If there is any substantial evidence to support it the order of the Assistant Secretary of Labor cannot be nullified through the writ of habeas corpus. Ng Fung Ho v. White, 259 U.S. 276, 278, 42 S.Ct. 492, 66 L.Ed. 938; Ex parte Wong Nung, Wong Nung v. Carr, 9 Cir., 30 F. 2d 766. But for the reasons about to be recited, appellant claims that there was no fair hearing and that there was no substantial evidence to support the charges upon which the order of deportation was based. It will be necessary to detail the procedure of the case.

On February 2, 1938, the appellant was arrested by the police of Los Angeles, California, upon telegraphic information that appellant was wanted in Texas, but nothing came of this as the Texas state authorities withdrew all requests that he be held for them. While under detention, a United States Immigration Inspector interviewed appellant. It does not appear that he was at this time charged with being wrongly in the United States, or at least that he had been informed of any such charge. However, Immigration Inspector Milford M. Henderson informed appellant of the situation in the following language:

"I am a United States Immigrant Inspector and authorized by law to administer oaths in connection with the enforcement of the immigration law. I desire to take a statement regarding your right to be and remain in the United States. Any statement which you make should be voluntary and you are hereby warned that such a statement may be used against you either in criminal or deportation proceedings. Q. Are you willing to make a statement or answer questions under these conditions?"

Answer (by appellant) "Yes."

The Inspector says that appellant was then sworn by him, but appellant denies this. Appellant was given a searching examination. It may be noted that no mention of appellant's right to be represented by an attorney was made by the Inspector, and it may be stated that no attorney was present. The examination was conducted

in the English language, was taken down in shorthand by the Inspector, and the transcription of this examination was made the basis of the charges against appellant heretofore set out and herein being considered.

A regular hearing on such charges began on February 14, 1938 before United States Immigration Inspector J. B. Pendergast, at the Los Angeles County jail, and after having been shown the warrant of arrest of the Assistant Secretary of Labor appellant was informed of his rights and the hearing was continued until later the same day when his attorney appeared. Thereafter appellant and several witnesses were sworn and gave testimony, and the hearing was continued from time to time, concluding on March 8th, 1938. Appellant was questioned and he gave answer partly in the English language and partly in Spanish through an interpreter. At the conclusion of the hearing appellant asserted that he had understood the proceedings with the interpreter helping him out.

The transcription of appellant's statement to Inspector Henderson was admitted in evidence as Exhibit "A" over a general objection and over the specific objection that it was taken without an attorney being present and without appellant's being informed that he had the right to have an attorney present. This, appellant claims, vitiates the proceedings. We do not agree. The circumstances are far different from those in the case relied upon—Ungar v. Seaman, 8 Cir., 4 F.2d 80. It will be profitless to recite the details of that case. The case of Ex parte Ematsu Kishimoto, 9 Cir. 1929, 32 F.2d 991, is more nearly in point. Therein the court said [page 992],

"Inasmuch as the petitioner was given repeated hearings by the respondent and by the Department of Labor while he was represented by counsel and was then permitted to present any evidence he desired and also to cross-examine all the witnesses against him, the claim of unfairness in the proceedings simmers down to the claim that it was an invasion of the appellant's right to a fair hearing to obtain a statement from the appellant while he was in custody and before he secured the services or advice of counsel. This position cannot be maintained. Chan Wong v. Nagle (C.C.A. 9) 17 F.2d 987; Plane v. Carr (C.C.A. 9) 19 F. 2d 470."

The statement was properly received in evidence. There were several very important statements in this exhibit. We refer to a few of them:

Question by the Inspector: "Was it your intention at that time (the Brownsville entrance) to take up a temporary residence in the United States?"

Answer by appellant: "No, I intended to take up permanent residence."

"Q. Did you go to any American Consul and apply for a visa? A. Yes, at the American Consulate in Ensenada. He asked me for my police record for the place I had been last and I wrote to the sheriff at Laredo asking for a letter and that is how they caught me.

"Q. Prior to your entry on or about December 30 or 31st, 1937 at Laredo, Texas, did you apply for an immigration visa at any American Consulate? A. No, I was in too big a hurry.

"Q. If you intended to take up permanent residence in the United States why didn't you apply for an immigration visa first? A. As I say, I was in a big hurry at that time.

"Q. Did you make application for a visa at the American Consulate at Ensenada, B. C. Mexico after you had been admitted for a temporary visit? A. Yes.

 *   *   *   *   *   *

"Q. Are you now being held by the Fugitive Detail of the Los Angeles Police awaiting extradition proceedings for embezzlement? A. Yes.

"Q. If you should come to trial for this embezzlement, do you intend to plead guilty or not guilty? A. Guilty I suppose. I do not deny I did it.

"Q. Do you admit you committed the crime of embezzlement prior to your last entry into the United States on or about December 30, 1937? A. Yes, I did it all right but I did not do anything in Texas. So, I do not know how they will extradite me but Joe Martin, the sheriff at Laredo, is a friend of the boss. But, I never did anything in Texas.

 *   *   *   *   *   *

"Q. Have you understood everything said during this hearing? A. Yes."

At the regular hearing appellant denied that he came in at Brownsville with the intention of staying in the United States; admitted that he went to consult the Consulate at Ensenada, but claims that it was for information regarding and not to arrange for an immigrant visa. He testified

that he did not understand the meaning of the word "embezzlement" and denied that he had committed any crime in Mexico or that he had admitted committing any crime there.

In the circumstances it was certainly not an abuse of discretion for the Assistant Secretary of Labor to believe the statements contained in Exhibit "A" instead of his denials and explanations made by him at the hearing. United States ex rel. Tisi v. Tod, 264 U.S. 131, 44 S.Ct. 260, 68 L.Ed. 590. There was ample evidence, therefore, upon which to base the conclusion that the alien (appellant) both misrepresented his intention to the Brownsville Immigration authorities and withheld important information from them, and that his real intention was to stay in the United States and not merely to pay a visit thereto.

In justice to the appellant, it should here be stated that the Department did not sustain the charge that appellant had committed or had admitted that he committed embezzlement.

[4-6] But, says appellant, the hearing was not concerned with the Brownsville entry; it was concerned alone with the San Ysidro entry. Again we cannot agree. Every entry into the United States from a foreign country is an original entry.

"* * * an alien who voluntarily leaves this country is subject to all the provisions of the Immigration Act whenever he seeks to return." Bendel v. Nagle, 9 Cir., 17 F.2d 719, 720, 57 A.L.R. 1129. That being the case, it would seem that the legality of an entry can never be based upon a former illegal entry.

The Brownsville entry was gone into by the Government at the hearing and appellant made no request for time to prepare against such a hearing. On the contrary, he proceeded to give testimony relating thereto.

The Immigration Law provides for inspection of every person applying for entry for an indeterminative period, and such person under the law is termed an immigrant. The evidence in this case is sufficient to sustain a finding that instead of a visitor appellant was in fact an immigrant when he entered the United States at Brownsville. This being true his written permit to be in the United States as a visitor was of no validity. And even if we should hold that this permit would remain valid until declared invalid upon a direct attack it would avail appellant nothing. The evidence convinced the Assistant Secretary of Labor that appellant was an immigrant when he reentered at San Ysidro. In this status a permit theretofore issued to appellant as a visitor and not yet expired would not affect the necessity of inspection when he again applied at the border for entrance.

Affirmed.