### FLYNN ex rel. YEE SUEY v. WARD, Com'r of Immigration.

#### No. 3432.

Circuit Court of Appeals, First Circuit.

June 13, 1939.

Walter Bates Farr, of Boston, Mass. (Everett Flint Damon, of Boston, Mass., on the brief), for appellant.

Alfred G. Malagodi, Asst. U. S. Atty., of Boston, Mass. (Edmund J. Brandon, U. S. Atty., of Boston, Mass., on the brief), for appellee.

Before WILSON, Circuit Judge, and PETERS and FORD, District Judges.

FORD, District Judge.

This is an appeal from an order of the District Court dismissing a petition for a writ of habeas corpus.

The relator, Yee Suey, sought admission to the United States as the son of Yee On Lan, deceased, an American citizen. The citizenship of the alleged father was conceded by the authorities. A Board of Special Inquiry excluded the applicant on the ground that he had not established his relationship to Yee On Lan and the decision was affirmed on appeal by a Board of Review.

The District Court found discrepancies in the testimony of such a character as to constitute substantial evidence to support the position of the Immigration authorities. The appellant assigns as errors (1) the denial of the petition, and (2) the failure of the District Court to find that the action of the Immigration authorities was arbitrary and unfair.

Witnesses for the relator were an alleged brother, Yee Ngoon, and his paternal uncle, Yee On Quan, who testified briefly. The former had been admitted to the United States at Boston in 1931.

The discrepancies relied upon by the Government were as follows:

In reference to the members of the family of the applicant, his alleged brother, Yee Ngoon, testified at Boston, in 1931, as did another alleged brother, Yee Tom, in June, 1929, that both of their maternal grandparents were dead and that their mother never had any brothers or sisters, and at the present hearing Yee Ngoon testified that his maternal grandparents were living and his mother had a brother and when confronted with this discrepancy, relied upon the fact that he had made a mistake in his statements in 1931 and that his alleged brother Yee Tom also made a mistake in replying to the questions in 1929, when the latter applied for admission, when he asserted his maternal grandparents were dead and their mother had no brothers or sisters. In the present case the applicant testified in agreement with Yee Ngoon's present testimony that both his maternal grandparents were alive. The judge in the District Court found that if Yee Ngoon adhered to his former testimony in regard to the existence of his maternal grandparents of which he naturally would know, there would be present a substantial discrepancy.

In 1924 Yee Wing, a Chinese boy, applied for admission as a son of this applicant's alleged uncle, Yee On Hung. He was excluded and prior to his deportation confessed that he was not the blood son of his alleged father, Yee On Hung, but was merely an adopted son, and made the further statement that his adopted father, Yee On Hung, had no natural children. The applicant testified that the family of his uncle, Yee On Hung, consisted of a wife and five sons, three of whom, including the same Yee Wing, were now living in the home village. Yee Moo, a landed alleged son of Yee On Hung testified in 1931 that his brother, Yee Wing, had died soon after his return to China in 1925. Yee Ngoon, the alleged brother and witness for the applicant in the present hearing, testified in 1931 that Yee Wing was then living. The applicant also testified that Yee Wing told him several times that he had been deported and he saw him in his home village the day before he left for America and that he was the real son of his alleged paternal uncle, Yee On Hung. He insisted Yee Wing was not dead, that he was living in the home village, but he admitted that an alleged cousin, Yee Quong, who testified at Seattle about six years before the present hearing and said that Yee Wing, his brother, was dead, should know more about it than he did, inasmuch as Yee Quong had been in China and should know whether his brother was alive or dead. The applicant also stated that the statement of Yee Wing when applying for admission in 1924 that his paternal uncle, Yee On Lan, whom the applicant claimed as his father, had only two sons, was a mistake, because he, the applicant, claimed two older brothers who had been previously landed. Also, when confronted with the statement of his alleged paternal uncle in testifying for Yee Wing at San Francisco, the latter having just returned from China, that his brother Yee On Lan had a wife, two sons, and one daughter then living and the name of the daughter was Yee Suey, the same name the relator was claiming, the applicant maintained that the alleged uncle was wrong in his statements.

The applicant stated at the hearing that he commenced to attend school in his home village and continued to attend there until the third month of this year; that he attended that school with his brother, Yee Ngoon, two years; that both he and his brother, Yee Ngoon, always slept at home while attending school and when the applicant was informed that his alleged brother, Yee Ngoon, had stated, when applying for admission in 1931, that he, Yee Ngoon, had slept in the schoolhouse all the time

after he began to attend school, the applicant stated that he slept at home all the time.

The applicant's alleged brother, Yee Ngoon, testified at the present hearing that he attended school with the applicant for two or three years; that the applicant had slept in that schoolhouse from the time the applicant commenced to attend school and that he, Yee Ngoon, slept in that schoolhouse up to the time he was married or about one year before he left to come to the United States. Yee Ngoon stated the applicant was mistaken, when he was informed that the applicant had insisted that he, the applicant, had never slept in the schoolhouse and Yee Ngoon could not understand why the applicant should say that he, Yee Ngoon, had never slept in the schoolhouse.

In 1931 Yee Ngoon testified that the houses in the claimed home village of himself and the relator were all separated from one another with space between them sufficiently wide so that a person could easily pass between the houses. In the present case he testified, as did the relator, that the houses in the several rows were built together in such a manner as to constitute a solid block.

The alleged uncle, Yee On Hung, the only other witness for the applicant had not been in China since 1911 and had very little knowledge of the applicant except what had been written him by the relator's alleged mother.

It is the contention of the appellant in this case that no fair-minded person, viewing the evidence in an open state of mind, could have arrived at a conclusion similar to that reached by the Immigration officials.

■ It is well settled that the burden rests upon a Chinese applicant to prove he is the son of an American citizen and a denial of a fair hearing could not be established by showing that the decision of the Immigration officials was against the weight of the testimony.

■ Neither the Judge in the District Court nor the Judges of the Circuit Court of Appeals are weighers of the evidence in a case of this kind, and the review of this court is limited to the substantial fairness of the proceedings. Quon Quon Poy v. Johnson, 273 U.S. 352, 358, 47 S.Ct. 346, 71 L.Ed. 680; Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938; Kwock Jan Fat v. White, 253 U.S. 454, 40 S.Ct. 566, 64 L.Ed. 1010; Chin Yow v. United States, 208 U.S. 8, 28 S.Ct. 201, 52 L.Ed. 369; Del Castillo v. Carr, 9 Cir., 100 F.2d 338; Chun Kock Quon v. Proctor, 9 Cir., 92 F.2d 326, 327; White, Com'r v. Chan Wy Sheung, 9 Cir., 270 F. 764.

As the court said in Ng Fung Ho v. White supra, 259 U.S. page 284, 42 S.Ct. page 495, 66 L.Ed. 938:

"For, where there is jurisdiction, a finding of fact by the executive department is conclusive * * * and courts have no power to interfere, unless there was either denial of a fair hearing, * * * or the finding was not supported by evidence * * * or there was an application of an erroneous rule of law * * *."

■ The exclusion of Chinese cannot be justified merely because there are trivial and slight discrepancies in his proof nor can an unjustifiable and arbitrary deduction from the evidence be made the basis for an order for exclusion. That sort of procedure would demonstrate that the hearing was unfair. On the other hand, the mere say-so of interested witnesses does not have to be accepted and where the discrepancies in the testimony produced are substantial and serious so as to throw doubt on the relationship of the applicant to his alleged citizen-father, the authorities are justified in determining the applicant has not sustained the burden imposed upon him and it cannot be said that the hearing accorded him was unfair or arbitrarily conducted. The discrepancies in the testimony in the present case concerning the maternal grandparents of the applicant and his relatives, and the attendance at school by the relator and his alleged brother are material discrepancies of a serious nature, and taken together with the discrepancies in the testimony as to the physical characteristics of the village of the applicant, and other minor discrepancies, they throw doubt on the identity of the applicant and afford substantial evidence of contradiction upon important matters to the authorities upon which to base a decision as to whether or not the burden of proof imposed upon the applicant has been sustained. United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 47 S.Ct. 302, 71 L.Ed. 560; Kishan Singh v. Carr, 9 Cir., 88 F.2d 672; United States ex rel. Gong Sik Ho v. Corsi, 2 Cir., 62 F.2d 785.

We cannot say that the District Court was wrong in finding that there was nothing unfair or arbitrary about the hearing conducted by the Immigration authorities

and that there was substantial evidence upon which they could base their decision to exclude the present applicant on the ground that the claimed relationship was not satisfactorily established.

The order of the District Court dismissing the petition for writ of habeas corpus is affirmed.