**YIP MIE JORK, Appellant,**

v.

**John Foster DULLES, as Secretary of State, Appellee.**

**No. 14925.**

United States Court of Appeals
Ninth Circuit.

Oct. 19, 1956.

Marshall E. Kidder, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Max F. Deutz, Andrew J. Davis, Jr., Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before HEALY and CHAMBERS, Circuit Judges, and SOLOMON, District Judge.

SOLOMON, District Judge.

Appellant Yip Mie Jork [1] brought this action under the provisions of § 503 of the Nationality Act of 1940, 8 U.S.C.A. § 903,[2] for a judgment declaring him to be a citizen of the United States. He asserts that he acquired United States citizenship at the time of his birth, pursuant to § 1993, Revised Statutes of the United States.[3]

Yip Mie Jork made an application to the American Consul General at Hong

---

1. Yip is the family name; Chinese custom places it first, followed by given names.

2. This section was repealed by the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1503.

3. § 1993 as it existed at the time of appellant's birth read as follows:

"All children heretofore born or hereafter born out of the limits and jurisdiction of the United States, whose fathers were or may be at the time of their birth citizens thereof, are declared to be citizens of the United States; but the rights of citizenship shall not descend to children whose fathers never resided in the United States."

For the provisions as revised, see 8 U.S.C.A. §§ 1409, 1431–1433.

Kong for a United States passport. After waiting 28 months for the application to be granted or denied, he filed this action against the Secretary of State. In his complaint, he set forth the facts concerning his application for a passport. He also alleged that his father, Yip Dock, a native-born American citizen, and his mother, Wong Shee, were married in China while his father was on a visit, and that he was born as issue of this marriage in Kin Mo Village, China, on February 22, 1928.

The Secretary of State filed an answer in the nature of a general denial, but at the trial conceded that Yip Dock was a native-born American citizen.

Prior to the filing of the action, Yip Mie Jork applied for a certificate of identity to permit him to travel to the United States to prosecute an action to establish his status as a national of the United States. By reason of his inability to obtain such a certificate, Yip Mie Jork did not testify at the trial. However, eight witnesses testified on his behalf.

Chew Jock testified that he met Yip Dock in Stockton, California, in 1918. Later, when on a trip to China, he went to the Kin Mo Village, where he attended a birth feast for a male child of Yip Dock. The child was named Mie Jork, and the banquet occurred in March or April, 1928. In the late 1940's Chew Jock returned to China where he saw Mie Jork several times. However, he was not in a position to state that the Mie Jork whose birth feast he attended was the same Mie Jork whom he met on his later trips.

The Immigration and Naturalization Service file on Yip Dock contains a statement which he gave to the immigration authorities on July 5, 1929, when he re-entered the United States. This statement shows that he had recently become the father of two sons, Yip Mie York and Yip Share Wong, both born in Kin Mo Village. Mie Jork's birth date was given as February 22, 1928.

From the time Mie Jork was five or six years of age, his identity is well established.

Leong Lan Gin, who is two and one-half years younger than Yip Mie Jork, lived in the Kin Mo Village four houses away from the Yip home until she was 18 years of age. As a child, she played with Mie Jork and with his younger brother Share Wong. They all went to the same school and they visited at each other's homes. She identified pictures of the two boys and of their parents, Yip Dock and Wong Shee, and she testified that the boys called Wong Shee "mama."

Russell Chan, who is approximately four years older than Mie Jork, lived in a neighboring village as a child. From 1932 to 1938, he and his mother visited with Mie Jork and his mother three or four times a year.

Fay Jean Chew, a distant cousin of Mie Jork, lived in a neighboring village as a child and visited at the Yip home in Kin Mo Village two or three times a year. During such visits, she played with Mie Jork.

Yip Share Leung testified that although he is a half-brother of Mie Jork, he did not meet him until 1949, when he saw Mie Jork in Macao. His son She Mang testified that he and Mie Jork are about the same age and when he visited with his mother in Kin Mo Village in 1938 he played with Mie Jork and Share Wong.

Other witnesses testified that they had seen Mie Jork in the Yip home in Kin Mo Village and all of the witnesses identified pictures of the Yip family and testified that the photographs of appellant Yip Mie Jork were of the same person they knew as Yip Mie Jork in Kin Mo Village.

At the conclusion of the case, the trial judge in a colloquy with counsel announced that he was holding for the defendant because petitioner had not sustained the burden of proof. Specifically, the court stated that there was a gap in the proof of Mie Jork's identity from the time of his birth until he was five or six, which gap left open the possibility that petitioner was actually another child who had been substituted in the Yip home for the real Mie Jork.

We agree that this gap exists in the testimony, but we believe it to be closed by the inescapable inferences to be drawn from the surrounding evidence. The evidence showed that the American citizen Yip Dock had a son by his wife Wong Shee in Kin Mo Village, China, in 1928, and named the boy Mie Jork. Five or six years later, a boy of the proper age by the same name was found in the Yip home being treated by Wong Shee as her son and represented as such by her to others. In the absence of proof to the contrary, we see no reason to question the obvious inference that the boy born to Yip Dock in 1928 was the same boy later found in Yip Dock's home and subsequently identified as the petitioner in this case. We should not reject this inference on the mere conjecture that a substitution of children may have occurred, a conjecture which would require us to speculate also that the present effort to acquire citizenship is the culmination of twenty years of fraudulent misrepresentation.

The trial judge also indicated doubts of the credibility of several witnesses presented in support of the claim. He found it hard to believe that a witness who had been a playmate of Mie Jork could remember meeting him when she was as young as six years old. He noticed that the witness mistook the gap between their ages for five years instead of two and one-half years; and her statement that she played with this older boy seemed improbable to him, although he conceded that things might be different in China in this respect.

At the oral argument before this court, counsel for the Secretary of State frankly admitted that the inconsistencies in testimony were minor and related primarily to peripheral matters. We have carefully examined the evidence, and we agree with counsel's characterization of the discrepancies. We find them to be the familiar indications of the fallibility of human memory, rather than such major flaws as would reveal an attempt at fabrication. See Mar Gong v. Brownell, 9 Cir., 1954, 209 F.2d 448. Considering these discrepancies in relation to the testimony as a whole, we cannot find in them reason to disbelieve an otherwise convincing array of evidence. See Gung You v. Nagle, 9 Cir., 1929, 34 F.2d 848.

Counsel for the Secretary of State also admitted that the great bulk of the evidence was uncontradicted and not inherently improbable, but he contended that the trial judge in his discretion could nevertheless disregard it.

A court may reject evidence, but it may not do so arbitrarily. This court has on numerous occasions held that the trier of fact need not accept uncontradicted testimony when good reasons appear for rejecting it, such as the interest of the witness,[4] and improbabilities[5] and important discrepancies[6] in the testimony. However, when uncontradicted testimony has been rejected *without* good reason, we have reversed. E. g., Gung You v. Nagle, supra; Louie Poy Hok v. Nagle, 9 Cir., 1931, 48 F.2d 753.

The trier of fact must not raise his standards for acceptable testimony to the point where a special quantum of proof is required of persons claiming citizenship. Mar Gong v. Brownell, supra. The fear of being imposed upon by the fraudulent claims of non-citizens must not be allowed to eclipse our primary consideration—the importance of according to each of our true citizens the priceless rights and privileges to which his citizenship entitles him. Kwock Jan Fat v. White, 1920, 253 U.S. 454, 40 S.Ct. 566, 64 S.Ct. 1010.

Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., precludes an appellate court from disturbing findings of fact by a trial court unless they are clearly erroneous. In our view, the evidence and the inferences that must necessarily be drawn from such

---

4. Lew Wah Fook v. Brownell, 9 Cir., 1955, 218 F.2d 924; Flynn ex rel. Yee Suey v. Ward, 1 Cir., 1939, 104 F.2d 900.

5. Lew Wah Fook v. Brownell, supra.

6. Flynn ex rel. Yee Suey v. Ward, supra.

evidence clearly show that appellant Yip Mie Jork is the son of Yip Dock, an American citizen. We are "left with the definite and firm conviction that a mistake has been committed" by the trial court and that the findings of fact are clearly erroneous within the meaning of Rule 52(a). United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

The judgment of the district court is reversed, and the district court is hereby directed to enter a judgment recognizing the United States citizenship of Yip Mie Jork.