**WONG KWAI SING, by his next friend Wong Lum Sang, Appellant,**

v.

**John Foster DULLES, Secretary of State, Appellee.**

**No. 16086.**

United States Court of Appeals
Ninth Circuit.

April 6, 1959.

Verne O. Warner, San Diego, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Alfred B. Doutre, Richard A. Lavine, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, CHAMBERS and BARNES, Circuit Judges.

STEPHENS, Circuit Judge.

■ It is not disputed that Wong Kwai Sing, plaintiff-appellant, was born in China and is seeking a declaratory judgment under Section 503 of the Nationality Act of 1940 [1] decreeing that he is a citizen of the United States. The trial court did not believe the testimony introduced on behalf of the appellant to the effect that he was the son of an American citizen and gave judgment for the defendant. The plaintiff appealed. The only issue on appeal is whether the findings of fact are clearly erroneous.[2] We find that they are not.

■ The testimony on behalf of the appellant Wong Kwai Sing is to the effect that he was born in China in the village of Bon Mee Yin in 1921; that his mother was Chinese; that his father, Wong Lum Sang, although of Chinese ancestry, was a Hawaiian-born United States citizen; that the father left China when the appellant was two years old and did not return until 1948; that Wong Lum Sang recognized his son by means of pictures that had been sent him and because he was greeted by appellant as father; that an older son of Wong Lum Sang, Wong Kwai Yuen, was admitted to the United States as the son of a United States citizen in 1941; that this son returned to China in 1949 and was married in Hong Kong, and the couple visited the village of Bon Mee Yin shortly afterwards; that sometime between 1948 and 1950 the appellant went to Hong Kong to arrange to enter the United States, which he did in 1951 in order to prosecute this suit.

---

1. 54 Stat. 1171, 8 U.S.C. § 903, now 8 U.S. C.A. § 1503. For a discussion of this section, see 7 Stan.L.Rev. 360 (1955).

2. The burden of proof which must be met by the plaintiff is the ordinary civil one, a preponderance of the evidence. Wong Gong Fay v. Brownell, 9 Cir., 238 F.2d 1. See also Yip Mie Jork v. Dulles, 9 Cir., 237 F.2d 383, 385.

The court did not believe the testimony that the plaintiff was a member of this family because of improbabilities and major discrepancies in the testimony.[3, 4]

The appellant gave conflicting dates, 1948 and 1950, as to the time he first went to Hong Kong to arrange travel to the United States. Under proper questioning he claimed that he could not remember the last year he was in the village, which was also the year he left for Hong Kong; nor when his mother died, although she was alive in 1951; nor could he remember the names of the sons of a neighbor; nor how old two of his brothers were when a family picture was taken in 1948; nor could he remember when the pictures of himself which were sent his father were taken except that it was after the war and before his father's visit, when he was about twenty-five or twenty-six years old.

When appellant was asked why pictures of himself were taken, he replied, "The purpose of taking that picture was to have it sent to my father." (Rep. Tr. 100)

3. See, e. g., Lau Au Yew v. Dulles, 9 Cir., 257 F.2d 744; Louie Hoy Gay v. Dulles, 9 Cir., 248 F.2d 421; Yip Mie Jork v. Dulles, supra; and Mar Gong v. Brownell, 9 Cir., 209 F.2d 448.

4. The appellant testified that the family lived in two separate houses, whereas his sister-in-law testified that they lived in but one.
"Q. Did you all stay together? [This was on her first visit to the village after her marriage.] A. Yes.
"Q. In the same house? A. Yes.
"Q. They were all living in the same house then before you got there? A. Yes. They lived in the same house by the time I got there for the first time." (Rep.Tr. 71)
When the appellant appeared before the immigration authorities in Hong Kong, his sister-in-law was not asked to appear as a witness, even though appellant knew she was there. Each of appellant's witnesses testified she had stayed with the family at the village. The plaintiff was asked about this discrepancy.
"Q. Do you remember your sister-in-law testifying that you were all living in

The father, by his own testimony, appeared remarkably uninterested in his family.
"Q. Then your testimony is that you heard from your wife at least two or three times during the year? [This was each year in response to his remittances of money.] A. Yes.

"Q. Did you ever ask her how she was getting along? A. Not very often asking her how to get along.

"Q. Would you ask her how the family was? A. No.

"Q. Would she tell you how the family was? A. She didn't mention about it except acknowledging the receipt of the remittance.

\* \* \* \* \* \*

"Q. Did you ever ask your wife how your three sons were? A. No.

"Q. Were you interested in your three sons? A. I don't enquire about them. Sometimes I just sent one house when she visited you? A. You did not ask her individually.
"Q. Do you remember her saying that all the family lived in one house? A. I don't remember." (Rep.Tr. 114)
Other discrepancies appear from the statement that the plaintiff made to the immigration authorities in Hong Kong.
"Q. Were you, your two brothers and mother at home when your father returned? A. Yes.
"Q. About what time of day did your father arrive in the village? A. About 5 o'clock in the afternoon, and we were all in the house when he arrived."
Yet, the following was said in the District Court:
"Q. When he [your father] went back to China in 1948, where did you first see him? A. I went down to Hong Kong to meet his boat." (Rep.Tr. 44)
In Hong Kong he said that his father brought shoes and clothing for the family, whereas his mother and older brother said he brought nothing at all. He said that their rented farm is divided into two pieces, separated by a field, while his older brother said that it is just one large field, not separated at all.

money back for their support, and on the other hand, I was rather busy working here.

\*   \*   \*   \*   \*   \*

"Q. Did you ask your wife specifically about Wong Kwai Sing? A. No. After I received the pictures in that letter, she also asked me to make arrangements for this boy to come to the States, and so I did make arrangements for him." (Rep. Tr. 83, 84)

The alleged father testified that these were the only pictures of anyone in the family ever sent to him. Wong Kwai Sing testified that it was just about the time the pictures were sent that he began to write to his alleged father.

It is of some importance that the story the alleged father gave of his letter writing does not correspond with the testimony of appellant.

"Q. Did any of the other boys write to your father when you wrote to your father? A. They also did.

"Q. Did your mother write at the same time too? A. Yes.

"Q. Did your father answer all your letters, including those of your brothers and mother? A. When I wrote to him, he wrote back to me. When they wrote to him, he wrote back to them." (Rep. Tr. 102)

It appears that the family has been gathering evidence since 1942, yet none of the above letters were produced. However, the alleged father produced some receipts for remittances that he had sent his wife in 1942, addressed to the mother of Wong Kwai Sing.

We cannot say that the court was clearly wrong in rejecting the testimony that the plaintiff was the son of Wong Lum Sang.

Affirmed.