ELLANOR F. WILCOX *vs.* THE RHODE ISLAND COMPANY.

OCTOBER 19, 1908.

PRESENT: Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Rule Governing Trial and Appellate Courts in Granting New Trials on Ground of Insufficiency of Evidence.*

The rules governing trial and appellate courts in regard to granting new trials upon the ground that the evidence is insufficient to support the verdict are wholly different.

Where the evidence is conflicting and the *nisi prius* court has overruled a motion for a new trial, grounded upon the insufficiency of the evidence, the appellate court will not interfere where there is nothing to show that the jury were governed by any improper motives or that the trial judge erred in the performance of his duty.

(2)  *Damages.   Permanent Injury to Knee.*

Where plaintiff's knee was rendered permanently lame, a verdict for two
thousand dollars will not be set aside as excessive.

TRESPASS for assault and battery.   Heard on exceptions of
defendant, and overruled.

DUBOIS, J.   This is an action of trespass for assault and
battery, brought by the plaintiff to recover damages for in-
juries inflicted upon her, July 25th, 1904, in the town of War-
wick, by a car conductor in the employ of the defendant.

The case was tried before Mr. Justice Brown and a jury in
the Superior Court, in Providence county, and a verdict was
rendered for the plaintiff for two thousand dollars damages.
The case is now before this court upon the defendant's excep-
tion to the ruling of said justice denying the defendant's mo-
tion for a new trial upon the grounds that the verdict was
against the evidence and the weight thereof, and that the
damages awarded by said verdict were excessive.

It is claimed by the plaintiff that on the day in question she
and her mother, together with her son, a boy about nine years
of age, were about to become passengers upon one of the de-
fendant's cars at Oakland Beach, for the purpose of riding to
Providence, and that after her mother and son, had boarded the
car, and while she was in the act of boarding the same, to-
gether with a small "Esquimaux shepherd" dog, for which she
had a proper pass and which she held by an old soft clothes-
line wound around her hand, and had reached the rear platform,
the conductor, without warning, grabbed the dog and threw it
bodily from the car, which caused her to turn, and then pushed
her from the car to the station platform, upon which she fell
violently upon her right knee, which was thereby rendered per-
manently lame.

The plaintiff's story of the assault is corroborated by her
mother and son, and her statement of the injuries sustained is
confirmed by Dr. George D. Hersey, who testified that he ex-
amined her within a week of the alleged assault and found con-
tusions and bruises on the knee joint, and that he treated her

during August, September, and October, 1904, and that after that he has seen her at intervals when she has been at his office; and that she has a stiff knee which is a permanent injury.

The story of the plaintiff and her witnesses is denied by the conductor; but the motorman and baggage-master of the defendant and the messenger of Adams Express Company, who were in or about the car, merely deny seeing anything of the kind.

William D. F. Aldrich Jr., the motorman, testified in relation to the matter, as follows: "Q. 25. On that morning n question did you know of any person receiving injury on your car by being thrown off the car? A. I didn't know anything about it; no, sir. Q. 26. On that morning in question was there any complaint made in your presence or that you knew of ? A. No, sir; there was not."

Edward Russell, the baggage-master, testified concerning the same, as follows: "Q. 4. Do you remember the occurrence of Mrs. Wilcox, the plaintiff in this case, her mother, an elderly lady, and a dog boarding your car at Oakland Beach? A. Well, I remember at Oakland Beach we stopped there and there was a trunk on the platform belonging to Mrs. Wilcox and I put the trunk aboard the car and got out and looked out of the door and there was a lady standing on the platform and dog, a shepherd dog, and I got out of the baggage-room door and goes back to get the dog to bring it up in front in the baggage department and she said— Q. 5. When you had put the trunk aboard, and had gone back to get the dog where was the lady, where was she? A. The lady and the dog was on the platform of the station. Q. 6. Of the station? A. The station, yes. Q. 7. How near the car? A. Well, I should say eight or ten inches from the car." And Frank Tucker, the express messenger, in relation to the same, gave the following testimony: "Q. 18. Did you know anything about any injury that day? A. No, sir."

In support of its contention that the court below erred in denying its motion for a new trial upon the ground that the verdict was against the evidence, the defendant argues as follows: "This case is one which, from the extraordinary char-

acter of the plaintiff's testimony and from the overwhelming evidence of the defendent in contradiction of all the claims of the plaintiff, the defendant maintained and still maintains is one of pure out and out fraud and, therefore, seeks to be relieved from paying any such verdict as rendered. The appearance of the plaintiff and her family upon the stand, the manner of giving their testimony, coupled with the unbelievable testimony itself, show, without any question, that it is a case without any semblance of merit. It is not the intention of the defendant to write an extended brief, from the fact that the case is so peculiar that the fraud can only be detected by a careful reading of the testimony. It would be useless to attempt to set forth separately the contradictions contained therein, as that would include the recital of the whole transcript. Gruff, impulsive, high-tempered, the plaintiff is convincingly capable of anything."

(1) The position assumed by the defendant and other litigants, coming before this court on similar exceptions, convinces us that it may be well to state definitely the rules governing trial courts and appellate courts in regard to granting new trials upon the ground that the evidence is insufficient to support the verdict. The rules governing the respective courts are wholly different. The distinction is clearly pointed out in the case of *Dewey* v. *Chicago c., R. R. Co.*, 31 Iowa, 373, cited in *Clark* v. *Great Northern Ry. Co.*, 37 Wash. 537 (1905) and 2 Am. & Eng. Ann. Cas. 760, where the following language is used:

"We therefore avail ourselves of this occasion to correct what we understand to be a very general misapprehension on the part of district and circuit judges in respect to the rule as to new trials in the *nisi prius* courts. This court has repeatedly declared the rule for itself (and such is the rule in most appellate tribunals), that where the evidence is conflicting and the *nisi prius* court has overruled a motion for a new trial, grounded upon the insufficiency of the evidence, that we will not interfere. And this because, first, the jury have found the verdict and given credit to the witnesses on the one side of the conflict; second, the judge, who also heard the testimony from the mouths of the witnesses, and weighed the same in the balance

of his more cultured and accurate legal judgment, has, by overruling the motion, given his approval and indorsement to the verdict; and third, this court can never have the benefit of observing the conduct and deportment of the witnesses while testifying, nor even the peculiarity of their expressions, but generally only the substance of their testimony, and often in the language of the attorneys interested in the cause. A mention of these considerations upon which the rule for the appellate courts is (in part) founded, is sufficient to show that the rule ought not and does not have any application whatever to the *nisi prius* courts. Those courts ought to independently exercise their power, to grant new trials, and, with entire freedom from the rule which controls appellate tribunals, they ought to grant new trials whenever their superior and more comprehensive judgment teaches them that the verdict of the jury fails to administer substantial justice to the parties in the case. Whenever it appears that the jury have from any cause, failed to respond truly to the real merits of the controversy, they have failed to do their duty, and the verdict ought to be set aside and a new trial granted." See also *Gorman* v. *Hand Brewing Co.*, 28 R. I. pp. 183, 186.

There is nothing so peculiar about this case as to take it out of the general rule, applicable to appellate tribunals, above stated. The story of the plaintiff and her eye-witnesses, while remarkable, is not impossible and its probability and credibility were subject to the scrutiny of the trial judge and jury and they have seen fit to credit it. There is nothing to show that the jury were governed by any improper motives or that the judge erred in the performance of his duty. Nothing has been suggested to us in argument that was not urged upon judge and jury in the court below, including probably even the expressions above quoted," Gruff, impulsive, high-tempered, the plaintiff is convincingly capable of anything," which are meaningless to us because a mere reading of the transcript of testimony fails to disclose such characteristics. We can not hope to know as much about the witnesses as the trial court.

(2)    In view of the permanent character of the plaintiff's injury the damages can not be deemed excessive.

The defendant's exceptions are therefore overruled, and the case is remitted to the Superior Court with direction to enter judgment on the verdict.

*James A. Williams*, for plaintiff.

*Joseph C. Sweeney and Alonzo R. Williams*, for defendent.