JOHN BARLIK *vs.* UNITED ELECTRIC RAILWAYS COMPANY.

MARCH 4, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is an action of trespass on the case for negligence. It was tried in the superior court before a jury, and resulted in a verdict for the plaintiff in the sum of $25,638. The defendant filed a motion for a new trial on the usual grounds, including that of excessive damages, upon which ground the motion was granted by the trial justice, unless the plaintiff filed a remittitur of all of said verdict in excess of $18,000. Plaintiff duly filed such remittitur and defendant thereupon prosecuted its bill of exceptions to this court.

These exceptions are forty-six in number but defendant has expressly waived exceptions 1, 2, 4, 5, 6, 7, 8, 10, 11, 17, 21, 22, 23, 24, 25, 26, 27, 28, 30 and 31. Defendant has also submitted, without argument, exceptions 3, 12, 13, 14, 15, 16, 18, 19, 20, 29, 32, 33, 34, 35 and 36. Since under our well-established rule we do not consider exceptions which are neither briefed nor argued, these exceptions are deemed to be waived. The remaining exceptions are eleven in number and relate to rulings of the trial justice made in the course of the trial and to his denial of defendant's motion for a new trial upon the filing of the plaintiff's remittitur.

The plaintiff was injured in attempting to board one of the defendant's cars on Cottage street in Pawtucket one evening at about 11 o'clock. The car was operated and controlled by one operator whose post of duty was in the front vestibule of the car. This car was equipped with folding doors which folded inside the vestibule when the doors were opened to permit passengers to enter or leave. Passengers entered and left the car by this front vestibule door. On the outside of the car at this doorway there was a fixed step and two grab handles on each side of the doorway. In the middle of this doorway there was an iron stanchion running the full height of the doorway and situated entirely within the vesti-

bule so that when the doors were closed they fully enclosed the stanchion.

The accident occurred on Cottage street in the city of Pawtucket about forty feet north of its intersection with Grove street. At the time of the accident the car was headed north and had stopped a few seconds previously to permit a lady passenger to leave the car. Grove street runs in a general easterly and westerly direction and crosses Cottage street; but west of Cottage street Grove street bears the name of Exchange street. For the purpose of this discussion it will be considered the same street and referred to as Grove street.

At the intersection of Grove and Cottage streets there is an overhead highway traffic signal light and on the easterly side of Cottage street, a few feet south of its intersection with Grove street, there is a so-called white post, which is designated as a regular stop for receiving and discharging passengers. On the night of the accident the defendant's car went by this post without stopping, as there was no one waiting there to get on, according to the testimony of the operator of the car.

However, either after the operator had passed the post or just as he was about to pass it, a lady passenger indicated to him that she desired to get off. To accommodate her, the operator testified, he stopped the car about forty feet north of the northeasterly corner of Grove and Cottage streets. The operator further testified that he looked toward the door while the lady was leaving; that he could see the step on the outside of the car and also the grab handles on the sides of the doorway; that he saw no one there after the lady had alighted and that he closed the doors and then directed his attention to the front of the car before proceeding.

Louis Ouellett, a witness for the defendant, corroborated substantially the testimony of the operator as to the departure of the lady passenger from the car and the condition of the doorway and step when the doors were closed by the

operator after the passenger had reached the street. He testified that he was, at that time, standing in the front vestibule a little to the left and behind the operator, and was looking in the direction of the doors; that when the operator opened the doors, he could see the outside step, the grab handles and the street; that he watched the passenger alight from the car to the street and that he did not see any other person's foot on the step or any hand on the grab handles at that time or before the doors were closed. He further testified that he saw the doors closed by the operator and that when the car had proceeded almost a mile further north, the operator was first notified by a passing motorist that an accident had occurred near Cottage and Grove streets.

At the time the car passed the intersection the plaintiff was on the sidewalk at the southwesterly corner of Cottage and Grove streets and, according to his testimony, had intended to board the car at the stop across the street but was not able to cross the street in time to do so. Seeing the car come to a stop on the other side of the intersection, he testified that he immediately ran or walked fast, he says both, diagonally through the intersection and around the rear of the car; that he continued to walk fast or run in the street along the right side of the car while it was still stopped; and that when the lady had gotten off the car, he was about three feet from her. Then it was, so he testified, that he grabbed or reached for the handle of the car and put one foot on the step when the car started and he was hit on the head with something. Later he testified that it was the door which hit him on the head, but he also testified at one time, in cross-examination, that he did not know how the accident happened.

There was also in evidence a hospital report that he had stated to the doctor that he attempted to grab the handle of the car while it was in motion and that he either fell or was run over by an automobile. It was also stated in this

report that the plaintiff's breath had the odor of liquor, but, there was also testimony to the contrary.

The plaintiff produced a witness by the name of Kenyon who saw the plaintiff walking fast or running for the car, and he is the only witness who was in a good position to tell how the accident happened, yet strangely enough, he could not or at least he did not do so on the witness stand. The testimony of this witness is as significant for what it omits as for what it includes. According to his testimony he was about at the northeasterly corner of Cottage and Grove streets, having come east from Spring street, when the trolley car passed the intersection of Grove and Cottage streets and stopped just north of the intersection, with the front door of the car about forty feet distant therefrom.

This witness further testified that he saw the plaintiff on the diagonally opposite corner, that he watched him run or walk fast diagonally through the intersection and around the rear of the car over toward its right side; that he noticed the lady get off the car, walk to the sidewalk and face the car; that when the lady got off, the plaintiff was about three feet away from the door. Apparently both of these persons were in his line of vision as were also the step and grab handles at the doorway of the car, at which time he had already testified plaintiff was three feet away from the door. He did not testify that he saw Barlik take hold of any part of the car or put his foot on the step. All he could say was that he next saw the plaintiff fall just after he had seen him three feet from the point where the lady passenger alighted.

There was also some testimony by a witness named Thurber which did not differ materially from the other testimony as to the action of the plaintiff just before the accident, except that this witness testified that he saw a man on the easterly side of Cottage street at the white post as a car went by traveling north and that at that time the man appeared to be walking up and down near a fence, as though

waiting for the car. Later, however, the witness testified that, after another car went by in the same direction as the preceding one, the man ran diagonally across the street to overtake it. The witness testified that he believed that this man was the plaintiff whom he observed shortly thereafter lying in the street.

It would appear from all this testimony that the plaintiff was injured while attempting to board the car after approaching the doorway from the rear and when he was not in the line of vision of the operator watching for persons intending to board the car. It is undisputed that he gave no signal of any kind that he desired to board the car despite the fact that he knew that the car was stopped at a place not customarily used for receiving passengers, and that ordinarily the operator would not expect anyone approaching from the rear of the car to take hold of a grab handle or place any part of his person on the car without first giving notice of some kind to the operator of an intention to board the car.

On this evidence a close case is presented as to whether the defendant is liable. The defendant strongly urges that as a matter of law the plaintiff is barred from recovery and that, in any event, the verdict of the jury is clearly against the great weight of the evidence and therefore it should be given a new trial.

Defendant's exception thirty-seven is to the ruling of the trial justice denying its motion for a directed verdict. The defendant contends that, even on a view of the evidence most favorable to the plaintiff, the plaintiff cannot recover, and in support of this contention it makes in its brief an exhaustive analysis of the evidence. From this analysis it concludes that there is no evidence sufficient in law to support findings of the jury that at the time of the accident the plaintiff was in the exercise of due care and that the defendant was negligent. Therefore, defendant argues that the

trial justice was clearly wrong in allowing the jury to pass upon the evidence.

We have carefully considered the evidence and are frank to say that it is rather meagre, and somewhat vague and unconvincing as proof of those necessary elements of the plaintiff's case. But bearing in mind, as we must, that on the consideration of a motion for a directed verdict by the defendant, the trial justice must view the evidence most favorably to the plaintiff and that he is not permitted to weigh the evidence or pass upon the credibility of the witnesses, we are of the opinion that the motion was properly denied. The evidence, while scanty in amount and not very convincing in character as proof of the necessary elements of the plaintiff's case, is sufficient to raise a question of fact for the jury. Defendant's exception thirty-seven is therefore overruled.

Defendant's exceptions forty-one to forty-six inclusive are to the denial of the defendant's motion for a new trial on the several grounds set forth therefor in said motion. The defendant contends under exception forty-one that the trial justice erred in denying said motion, because the verdict of the jury is contrary to the evidence and to the weight thereof. In pressing this contention, it strongly urges that the trial justice did not fairly review all of the evidence in the case, and that a fair and comprehensive review will show that the jury's verdict is clearly wrong. Other contentions are made under the other exceptions, on the law and the damages, but we shall consider only this one based on the evidence.

In the determination of this motion, the trial justice was not limited in his consideration of the evidence as on a motion for direction of a verdict but was free to weigh the evidence and pass upon the credibility of the witnesses in the exercise of his independent and more comprehensive judgment. "The purpose of this practice is not to substitute the decision of the trial judge for the verdict of the jury but

to secure further and more painstaking consideration of the case by another jury." *Bevan* v. *Comstock,* 48 R. I. 285 at page 287. The trial justice is not only free to exercise his independent judgment in this manner but it is his duty to do so. Both this court and the party against whom the jury has rendered its verdict are entitled to the benefit of the more experienced and comprehensive judgment of the trial justice on the evidence in the case independently of that of the jury. *Nichols* v. *New England Tel. & Tel. Co.,* 57 R. I. 180; *Somerset Realty Co.* v. *Shapiro,* 51 R. I. 417. In the instant case the trial justice has given us, in his rescript, little more than an extended summary of the testimony of each witness, followed by a brief statement of his opinion that the evidence was sufficient to justify a finding by the jury that the plaintiff was free from contributory negligence and that the defendant was guilty of negligence. This does not aid us substantially in performing our duty, although it may be sufficient to amount to an approval of the verdict.

Unless the decision of the trial justice is clearly wrong we cannot disturb it. Where, however, from an examination of the evidence we are clearly convinced that the verdict of the jury does not correspond to the true merits of the controversy and where it clearly appears to us that the jury has disregarded the great weight of the evidence, it is our duty to overrule the decision of the trial justice approving such a verdict and to grant a new trial. Conformably to this well-recognized rule we have carefully read the transcript and considered the exhibits in the case.

Without further commenting on or characterizing the evidence in addition to what we have said about it above in view of our final disposition of the case, we are of the opinion that the trial justice has misconceived the effect and value of the evidence appearing in the record and that his decision on the motion for a new trial is therefore clearly erroneous. Apparently the jury did not base its verdict as to the defendant's liability on the evidence in the case but permitted it-

self to be influenced in that regard by a natural sympathy for the plaintiff, who had sustained the loss of a leg and unquestionably had suffered intense pain and agony. Under all the circumstances justice will be served if the case is submitted to another jury for consideration.

Defendant's exception forty-one is sustained for the reason that the evidence strongly preponderates against the verdict. Defendant's other exceptions, in view of the sustaining of this above-mentioned exception, need not be considered.

The case is remitted to the superior court for a new trial.

*Raymond E. Jordan, George A. Panaretos,* for plaintiff.

*Clifford Whipple, Earl A. Sweeney,* for defendant.