BELLA BRICKLE *vs.* JAMES W. QUINN, *C. T.*
HYMAN BRICKLE *vs.* SAME.

JULY 25, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. These are two actions of trespass on the case brought by a woman and her husband respectively to recover from the city of Woonsocket in this state, represented by its city treasurer, for damages sustained by the respective plaintiffs by reason of physical injuries to the wife, which they allege were caused by negligence on the part of the city.

In their declarations they allege, in substance, that this negligence on the part of the city, which we shall treat as the defendant, consisted in failing to use reasonable care to keep and maintain a certain public sidewalk, on the west side of Harris avenue in that city, in a reasonably safe condition for public use, but on the contrary negligently permitting a deep hole or depression in a certain described location in that sidewalk to remain there for a long period of time and without proper safeguards, after the city had notice of its existence, or would have had had such notice, if in the exercise of reasonable care.

They also allege, in substance, in their respective declarations, that while, by reason of the above-described negligence of the city, this hole was in such dangerous condition, the wife, while in the exercise of due care for her own safety and without knowledge of the hole, fell into it and suffered serious physical injuries, which caused the damages of which the plaintiffs respectively complain.

At the close of the evidence in both cases, when they were being tried together, for the second time, before a jury in the superior court, the defendant moved that a verdict in its favor be directed in each case. The motion was denied in the wife's case and an exception was taken by the defendant. The motion was granted in the husband's case and an exception was taken by him. The wife's case was then submitted to the jury, together with the following issues for special findings: (1) Did Mrs. Brickle know of the existence of the hole in the sidewalk prior to the time she fell? (2) Did Mrs. Brickle sustain her injuries by falling into the hole? (3) Were Mrs. Brickle's injuries sustained as a direct and proximate result of Mr. Brickle's conduct?

The jury answered "No" to the first issue; "Yes" to the second; and "No" to the third. They returned a verdict for the wife in the amount of $1800. The defendant filed a motion for a new trial in the wife's case on the grounds that the verdict was against the law and that it was against the evidence and the weight thereof; and this motion was denied by the trial justice.

The wife's case is now before us on the defendant's bill of exceptions, in which the only exceptions that are now insisted upon are the second, sixth and seventh. The second is to the ruling by the trial justice in denying the motion for the direction of a verdict in favor of the defendant. The sixth is to the refusal by the trial justice of the defendant's request that the jury be charged that the elements of financial damage, to wit, hospital, clinic and doctors' bills, should be disregarded by the jury. The seventh is to the denial by the trial justice of the defendant's motion for a new trial.

The husband's case is before us solely on his exception to the action of the trial justice in directing a verdict for the defendant.

According to uncontradicted evidence for the plaintiffs the location of the hole involved in the cases was in front

of the northeast part of a lot in Woonsocket where, in the lower part of a two-family house, the two plaintiffs and their two young children lived. The following facts were shown by uncontradicted evidence.

Harris avenue runs about north and south and the plaintiffs' home was on the west side of it. There were two parallel cement walks leading from the public sidewalk to the front and rear entrances respectively and about thirty feet apart, the one leading to the front entrance being to the north of the one leading to the rear entrance near the southwest corner of the house. The front of the house was a considerable distance from the street, nearly thirty feet.

The sidewalk was of sand and gravel, unfinished and without a curb. The middle part of the public road was of macadam; and most of the vehicular travel was over this part. Between this part and the sidewalk was a sand and gravel gutter about four or five feet wide. The accident occurred at about 11:30 p.m., on Saturday, July 20. During Friday the 19th, the wife stayed in the house all day. Late in the afternoon it began to rain and it continued to rain heavily for some hours.

There was no rain the next day, Saturday, and she first left her home at about 10:30 a.m., leaving through the back door and along the southerly entrance walk, turning to the right when she reached the sidewalk, and then proceeding to the south. She returned to the house at about noon, following the same route. At about 2:30 she walked out from the rear entrance again, this time with her husband and their baby, a few months old, to the sidewalk. There they entered their automobile and went in a southerly direction to Providence, where they spent the evening with her relatives.

On their return at about 11:30 p.m., they passed in front of their house, going north in the traveled part of the street. The husband, who was operating the automobile, made a

U turn with it some distance to the north and then came south on the west side of Harris avenue, partly on the macadam and partly on the gutter, and stopping just before coming in front of the north walk leading to the front entrance of their home. He got out first, walked around by the front of the car to its right side and she handed out the baby to him through the window in the door on that side. He then walked to the house carrying the baby.

When he had started to do so, she picked up a few of the baby's things in the car, opened the door on the right side and stepped down into the street. She then closed the door and started to walk to the sidewalk. After she had reached it and had taken two or three steps on it, her left foot went down into a hole, which was about knee-deep; and she fell forward and was seriously injured. She had not seen the hole or known anything about it up to that time.

She saw no light, near the hole, nor any barricade or other protection. It was a very foggy and dark night. There was a street light on the opposite side of the street, some distance to the north, but it did not illuminate the hole. Her testimony as to how the accident occurred was in many respects corroborated by the testimony of her husband, which was in no way inconsistent with hers. His testimony bearing on the questions of negligence by the city and of contributory negligence by him was to the following effect.

When he left home at about 8 o'clock, a.m., on the day of the accident, he observed, in front of the northeast corner of his home, a hole in the sidewalk, evidently caused by the heavy rain of the evening before. It was about two and a half feet north of the north side line of the house, extended easterly, and was about thirty-six feet from the northeast corner of the house. It was about 18 inches in diameter and about 36 inches deep.

He first went to the office of the city highway department in the "city barn" and found two men sitting at the desk there. They appeared to be in charge of the office and he told them about the hole. They told him that they would take care of it immediately. He then went to his office in the city. At about 10:30 o'clock, a.m., he called up his home from there by telephone. He was told that his wife was not at home and he then talked with a young woman who assisted with the housework and the care of the children. He told her to call up their landlord and tell him about the hole.

He returned to his home on that day a little after noon, after a very busy day at his office, and had his luncheon with his wife, leaving again with her and their baby to go to Providence, at about 2:30 o'clock, p.m. Meantime he paid no attention to the hole, not knowing whether it was still there or not; and he said nothing to his wife about it. He testified that it had probably "slipped his mind"; and that after he had talked to the city officials about it, he "was satisfied that it would have been taken care of and there was no more to be said about it."

When they left their home to go to Providence, they went out by the rear entrance and along the south walk to the public sidewalk where the car was parked. They got in and he drove off, without noticing or thinking anything about the hole. He thought nothing about it when they got back in front of their house near midnight. He testified that after he had gone to the city barn and had been told by the men there that they were going to take care of the hole, it had slipped his mind entirely, so that when he walked around the car and took the baby, he did not think of any hole, "because those things are usually taken care of."

The young woman who helped with the housework corroborated the husband's testimony as to his conversation with her about the hole. She testified that he asked her

to tell the landlord to call the city barn for somebody to come and fill the hole in front of the house and that she did so. She also testified that Mrs. Brickle was down town shopping at that time and that she did not tell Mrs. Brickle about the matter when the latter returned about noon.

The landlord testified that on that day he received such a telephone call from some one whom he supposed to be Mrs. Brickle, who told him about the hole; that in accordance with this conversation, he called up the city highway department and some person answered the call; that he told this person about the hole and said that it was a bad one and needed fixing; and that this person said: "This is the highway department," and "We will take care of it."

A witness for the city testified that at the time of this accident he was the commissioner of public works of Woonsocket; that one of the divisions in his department was the division of highways, the superintendent of which had his office in the "city highway barn", (where the plaintiff husband testified that he reported the hole involved in this case); that there had been a very heavy rain storm during the evening before the day of the accident; and that it caused a great many bad washouts and holes in the streets and sidewalks of the city, many of which were repaired, immediately after they were reported to or found by the division of highways, during that night and the next day.

The city superintendent of highways and his assistant testified, in substance, that on the morning of the day of the accident, they were in charge of the office at the city highway barn, at the time when the plaintiff husband, according to his testimony, gave notice there about the hole and also at the time when the plaintiffs' landlord, according to his testimony, gave notice there by telephone; and they denied that any such notice was given to them by anybody as testified. They denied that they or either of them had any knowledge

or notice of the existence of any such hole in the sidewalk until after the accident.

We shall discuss first the defendant's exception in the wife's case to the refusal of the trial justice to grant its motion for a new trial, which the defendant now tries to support solely on the ground that the verdict was against the evidence and the weight thereof. In stating his decision on this motion, the trial justice did not make it as clear as he should have made it that he was applying the correct rule to be applied by a trial justice in deciding on such a motion, namely, that a trial justice, after a jury trial, should grant a motion for a new trial on the ground that the verdict is against the evidence and the weight thereof, whenever his superior and more comprehensive judgment teaches him that the verdict is not supported by the weight of the evidence and therefore fails to administer substantial justice to the parties in the case. *Wilcox* v. *Rhode Island Co.*, 29 R. I. 292, 70 A. 913; *Barbour* v. *Hall*, 32 R. I. 245, at 246, 78 A. 1041; *Barlik* v. *United Electric Rys. Co.*, 60 R. I. 227, at 233, 197 A. 452, at 455.

As has been often stated, this does not mean that he shall merely substitute his judgment for that of the jury as to the conclusions of fact to be drawn from the evidence, but means that if, after giving to the jury's verdict the weight to which he deems it to be fairly entitled under the circumstances, he still is of the opinion that it is not supported by the weight of the evidence and does not respond truly to the real merits of the controversy, he should grant a motion for a new trial. *Wilcox* v. *United Electric Rys. Co.*, *supra*.

In the wife's case now before us the trial justice first stated in his decision, in substance, that he did not believe some of the vital testimony by her and her husband and was not convinced by some of the other testimony for her, and that if he were hearing the case without a jury, he would certainly have decided it for the defendant, yet that the jury

was trying it and had made special findings and that there was "evidence in the case which would warrant the jury in arriving at this result" and that under the decisions of this court, he could not disturb the result.

In view of the language of this decision and in view of the rule which was long ago approved in the *Wilcox* case, *supra,* and which has ever since been approved by this court as the proper one to govern the decisions of trial justices on such motions, we interpret his decision as meaning simply that if the case had been tried before him without a jury, he would have decided it for the defendant, but that he could not say that the verdict was one that the jury could not reasonably find on the conflicting evidence before them. *Humes* v. *Schaller,* 39 R. I. 519, 99 A. 55.

It is vigorously contended in behalf of the defendant that there was not sufficient evidence to support a finding by the jury that on the forenoon of the day of the accident the defendant had actual or constructive notice of the existence of the hole into which Mrs. Brickle fell. But, after examining and considering the evidence, we are of the opinion that there was evidence to that effect; and that we cannot say that it was not such as to support the special findings by the jury and to reasonably justify them in finding that the wife fell into the hole because of negligence by the defendant, as charged in her declaration, and without negligence on her part.

We therefore are of the opinion that the trial justice did not err in denying the defendant's motion for a new trial in her case. It follows from this conclusion that he did not err in denying the defendant's motion that the jury be directed in her case to find a verdict for the defendant.

The only other exception to be considered in the wife's case is to the refusal of the trial justice to instruct the jury to the effect that if they found a verdict in her favor, they should, in fixing her damages, disregard the elements of finan-

cial damage, that is, the hospital, clinic and doctors' bills, of which there were four. The transcript of the testimony does not contain any formal request for such an instruction. But it does show a statement by the trial justice, made after the jury had retired to consider their verdict, that he had been asked by the defendant's attorney to charge them to disregard these items and that he, the trial justice, had failed to do so, and that he wanted this attorney to have an exception. An exception for the defendant was accordingly noted in the transcript and was in the defendant's bill of exceptions, as filed and allowed in the wife's case, being the sixth exception.

In our opinion it must be treated as an exception duly taken. It is argued in the wife's behalf that the declaration in her case was taken by the jury to the jury room for their use and that it did not contain any such items of damage. But in the course of the trial bills for these items had been introduced in evidence as exhibits and testified to and apparently had been taken to the jury room with the other exhibits, although the jury had been told not to consider the husband's case.

Two of these four bills were made out to the husband alone and the aggregate charge was $291. The other two were made out to the wife only and the aggregate charge was $221.

It is contended for the wife that because her declaration did not contain any allegation of such damages, the jury could not have been misled by the failure of the trial justice to instruct them to disregard these bills.

The matter is none too clear; but after taking into consideration all the pertinent circumstances of the case, we are of the opinion that the failure of the trial justice to instruct the jury to disregard the elements of damage was not prejudicial error.

In the husband's case, his only exception before us is to the ruling of the trial justice in directing a verdict for the

defendant; and as to this exception the only question to be decided is whether, upon the evidence above stated and discussed, the jury could reasonably have found that he was not guilty of contributory negligence.

It is well settled in this state that an action properly lies in favor of a husband against a town or city to recover damages which he has suffered in consequence of personal injuries sustained by his wife through the negligence of the town or city in failing to keep its highway in a safe condition for travel. *Larisa* v. *Tiffany*, 42 R. I. 148, 105 A. 739.

The trial justice, in directing a verdict for the defendant in the husband's case, now before us, relied almost entirely on the recent case of *Rinfret* v. *Clegg, C. T.*, 58 R. I. 478, 193 A. 620. But in that case the dangerous sidewalk defect which caused the plaintiff's injuries had been in the same dangerous condition for about twenty years and she had known of it all this time. There was no evidence that at the time when she was injured she had any reasonable cause to believe that this condition had been removed. At page 480 (621), this court said: "A person using a sidewalk which he knows is in a defective or dangerous condition, who is not confronted with any sudden occurrence or emergency, is bound to exercise that degree of watchfulness and caution that a person of ordinary prudence would exercise under like circumstances."

This rule is entirely correct and governed that case. But in the instant case, according to the plaintiff husband's testimony, he was not aware, at the time of the accident to his wife, that there was still this hole in the sidewalk; and the reason why he was not aware was that, more than fifteen hours before that time, he had given notice of the hole to the men in charge at the office of the city division of highways and had been told by them that they would take care of it immediately; and that he had also arranged to have his landlord talk with them about it and ask them to have it fixed.

He testified, in substance, that, having taken these precautions and relying on the assurance given him by the men at the city office, he assumed that the matter had been attended to. These facts, to our minds, distinguish this case from the *Rinfret* case.

While the husband's case, in our judgment, is not at all a clear case of freedom from contributory negligence, even on the evidence for the plaintiff, we are convinced that on that evidence the jury could reasonably have found such freedom from contributory negligence by him; and that therefore the trial justice erred in directing a verdict for the defendant.

In the wife's case all the defendant's exceptions are over-ruled, and the case is remitted to the superior court for entry of judgment on the verdict.

In the husband's case, his exception to the direction of a verdict for the defendant is sustained, and the case is remitted to the superior court for a new trial.

*John R. Higgins, Sidney Silverstein, Louis M. Macktaz,* for plaintiffs.

*John J. Mee,* City Solicitor of Woonsocket, for defendant.