259 A.2d 401.

Robert T. Flynn *vs.* Grace C. Pearce, *Administratrix of the Estate of Henry C. Cochrane.*

DECEMBER 4, 1969.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Powers, J. This is a civil action by an attorney seeking to collect compensation for professional services as well as for incidental expenses incurred in connection with the services alleged. The case was tried to a Superior Court justice and a jury which returned a verdict for the defendant.

Thereafter, plaintiff seasonably moved for a new trial and, from the trial justice's order granting said motion, defendant duly appealed to this court.

The defendant is the administratrix of the estate of her late brother Henry C. Cochrane of whose estate and person she was also guardian at the time of decedent's death, having served as such fiduciary since 1942. During the guardianship period, the deceased had owned and operated a farm in Johnston, Rhode Island. Some time in 1957 he engaged one Jessie Mae Trayner to live on said farm as his housekeeper. Thereafter, namely June 10, 1959, Cochrane, although under guardianship, entered into a marriage ceremony with his housekeeper, the ceremony taking place in Seekonk, Massachusetts. This union was contrary to the wishes and judgment of Cochrane's guardian, defendant here, and considerable litigation ensued. See *Pearce* v. *Cochrane*, 95 R. I. 207, 186 A.2d 68.

In connection therewith, Cochrane engaged the instant plaintiff as counsel to represent him and Jessie. There is no question that plaintiff rendered substantial legal services for his clients over a period of years. He admittedly received compensation from time to time but the records that he kept in connection with his services were sketchy at best.

On the death of Henry Cochrane, his sister and former guardian applied for and was duly appointed administratrix of her brother's estate. The plaintiff filed a claim for legal

services amounting to $7,500 which claim, defendant, in her capacity as administratrix, disallowed. Thereupon, plaintiff commenced the instant action. At trial, he testified in great detail as to the nature and extent of the services he rendered and of the expenses incurred in connection therewith. The total value of his services, together with expenses, according to his testimony was $9,160. Two members of the Rhode Island Bar testified that the charges plaintiff was making for such services as those concerning which he testified were reasonable and fair.

It is worthy of note that the legal services for which plaintiff seeks to be compensated consisted largely of representing Henry and Jessie Mae in connection with litigation commenced in some instances by defendant as Henry's guardian and in other instances commenced by Henry in an effort to have defendant removed as guardian. The legal problems were of divers nature and, as jurisdiction appeared, were litigated in the Johnston Probate Court, District, Superior, Family and Supreme Courts.

It was not defendant's position before the jury that plaintiff had not in fact rendered the services for which he sought to be recompensed. Rather, she offered testimonial and documentary evidence tending to establish that plaintiff had been paid for his various services at the time they were rendered. Further, she contended that, since Henry had been under guardianship at the times he purported to engage plaintiff's professional services, Henry lacked capacity to contract for these services in his own name. It was also defendant's position that the marriage ceremony in Seekonk was a nullity and, consequentially, services rendered for Jessie Mae at Henry's engagement were likewise not chargeable to his estate.

The trial justice instructed the jury that plaintiff had the burden of proving by a fair preponderance of the evidence that he had, in fact, rendered the services to which he tes-

tified; that the charges for such services were reasonable and fair, and further, that since, as defendant contended, Henry was under guardianship at the times he engaged plaintiff, it was required of plaintiff to prove that the services rendered were "necessaries" within the meaning of G. L. 1956, §33-15-13.[1]

The trial justice further instructed the jury that by reason of §15-1-5[2] a purported marriage ceremony was a nullity if either of the parties thereto were a lunatic or idiot. He emphasized that the instant litigation did not involve the validity of Henry's marital status but that, since Henry's mental capacity was in issue, the question of plaintiff's legal services to Jessie Mae at Henry's engagement presented a question of fact which the jury must decide on the basis of conflicting expert medical testimony.

The defendant's verdict is general and whether it was reached by the jury on a rejection of plaintiff's evidence on one or all of the essential elements of the latter's case is not even open to an educated guess. Be that as it may, the trial justice's decision granting the new trial motion represents a painstaking performance of the duty imposed

---

[1]Section 33-15-13 provides: "The petitioner may cause a copy of the petition, with the order of notice thereon, to be recorded in the records of land evidence for the town or towns in which any land of the respondent is located. If a guardian is appointed upon the petition, all contracts relative to, and sales and conveyances of, land made by the respondent after such record, and all other contracts, except for necessaries, and all gifts, sales, or transfers of personal property, made by the respondent after the first publication of notice of the petition and before the termination of the guardianship, shall be void."

[2]Section 15-1-5 provides: "Any marriage when either of the parties thereto, at the time of such marriage, has a former wife or husband living who has not been, by final decree, divorced from such party, and any marriage where either of the parties thereto shall be an idiot or a lunatic at the time of such marriage, shall be absolutely void, and no dower shall be assigned to any widow in consequence of such marriage, and the issue of such marriage shall be deemed illegitimate and subject to all the disabilities of such issue."

by the rule first enunciated in *Wilcox* v. *The Rhode Island Company*, 29 R. I. 292, 70 A. 913.[3]

The trial justice in *Wilcox* v. *The Rhode Island Company, supra,* denied plaintiff's motion, but in *Noland* v. *Rhode Island Company,* 30 R. I. 246, 74 A. 914, plaintiff's motion was granted and the jury's verdict set aside. This court held that the rule in *Wilcox* applied in such cases and the trial justice's decision granting such motion would not be disturbed by this court unless erroneous. Later, in *McMahon* v. *The Rhode Island Company,* 32 R. I. 237, 78 A. 1012, we held that, if in the exercise of his independent judgment the trial justice finds that the verdict is against the fair preponderance of the evidence, it is the trial justice's duty to grant a new trial.

Thereafter, in a long line of decisions more definitively describing the duty of a trial justice, this court repeatedly affirmed and reaffirmed the guidelines first enunciated in *Wilcox, Noland* and *McMahon* cases. Indeed, in *Barbato* v. *Epstein,* 97 R. I. 191, 196 A.2d 836, the rule applicable to a trial justice's duty in passing on new trial motions was concisely but exhaustively set forth.

In the case at bar, the trial justice independently reviewed and discussed the evidence adduced by both parties. Enumerating the services rendered, he accepted the testimony of plaintiff and his witnesses as being more credible than that of defendant and her witnesses. Indeed, he expressly rejected defendant's testimony as being colored by

---

[3]In *Wilcox,* speaking of trial justices to whom motions for new trials are addressed this court at page 296 stated:

" 'Those courts ought to independently exercise their power, to grant new trials, and, with entire freedom from the rule which controls appellate tribunals, they ought to grant new trials whenever their superior and more comprehensive judgment teaches them that the verdict of the jury fails to administer substantial justice to the parties in the case. Whenever it appears that the jury have from any cause failed to respond truly to the real merits of the controversy, they have failed to do their duty, and the verdict ought to be set aside and a new trial granted.' "

bias. He noted that the charges made by plaintiff in his testimony totaled $9,160, and he accepted the testimony of the two attorneys that these charges were reasonable and fair. However, the disallowed claim upon which plaintiff was suing was $7,500 and he ruled that plaintiff was limited to this latter amount. Further, there were discrepancies between plaintiff's testimony on the charges being made for some of his services and his reply to interrogatories relative to such charges. Noting all such discrepancies, the trial justice held plaintiff to the charges set forth in his answers to interrogatories. Moreover, he pointed to defendant's documentary evidence of payment in certain instances and to plaintiff's admission of payment in others. Having done this, he found that defendant should be credited with $5,120.95, thereby reducing plaintiff's proven claim by this amount.

On the issue of whether the services rendered were "necessaries" within the meaning of §33-15-13, (see n. 1) he found that they were, citing *Crafts* v. *Carr,* 24 R. I. 397, 53 A. 275, and alluding to decisions in other jurisdictions on which he had expounded in his instructions to the jury.

Specifically discussing the legal obligation of defendant's estate for services rendered to Jessie Mae at Henry's request, the trial justice pointed out that the deceased had never been adjudicated insane and, this being so, there was a presumption of sanity unless such presumption were overcome by probative medical testimony. Pursuing this, he discussed the conflicting testimony of the two medical experts and found the testimony of plaintiff's witness to be more credibly persuasive.

Having thus independently reviewed the evidence, passed on credibility, and having related the evidence as he found it to the law he had given to the jury, the trial justice found that plaintiff had failed to receive the full consideration of the jury on the merits of the case.

In connection with her appeal, defendant makes numerous arguments most of which are so lacking in merit as not to require discussion. She does, however, make two contentions which should not be so lightly dismissed. Conceding that the decision of a trial justice granting a new trial will not be disturbed if made in accordance with the rule so comprehensively stated in *Barbato* v. *Epstein, supra,* she nevertheless vigorously contends that the trial justice's decision in the case at bar should be set aside for the reasons that the trial justice completely overlooked the testimony of Jessie Mae and, further, that he ignored the rule laid down by this court in *Higgins* v. *J. B. Farnum Co.,* 61 R. I. 262, 200 A. 538. We will consider these contentions seriatim.

It was the thrust of Jessie Mae's testimony that each time plaintiff was engaged, he requested and was paid the sum demanded for the service to be rendered. In a lengthy rescript wherein the trial justice referred specifically to some of the witnesses, he at no time alluded to Jessie Mae's testimony. This, defendant argues, is contrary to the rule laid down in *Jackowitz* v. *Deslauriers,* 91 R. I. 269, 162 A.2d 528, wherein we held that the trier of fact must accept uncontradicted and unimpeached testimony, but such testimony may be impeached by the trial justice provided that he averts in some manner, be it briefly, to his reasons for rejecting uncontradicted testimony otherwise unimpeached.

In relying on *Jackowitz,* defendant seizes on the observation made by this court in that case that, if the trial justice rejects testimony otherwise unimpeached, he must place that fact on the record. The trial justice in the instant case by not referring to the testimony of Jessie Mae, defendant argues, violated the rule set forth in *Jackowitz.* What defendant overlooks, however, is that the testimony of Jessie Mae was not uncontradicted. It was in substantial conflict with testimony of plaintiff. It is self-evident that,

where the testimony of two witnesses is conflicting and the trier of fact expressly accepts that of one, he implicitly rejects that of the other. Moreover, in *DiMaio* v. *Del Sesto*, 102 R. I. 116; 228 A.2d 861, we pointed out that a trial justice may not be said to have overlooked testimony to which he did not refer if, by pointing to the conflicting testimony on which he relies, his rejection of the other is clearly indicated.

The defendant's remaining contention requiring discussion is somewhat more complex. It is that the trial justice's decision is clearly wrong for the reason that he failed to give consideration to the rule enunciated in *Higgins* v. *J. B. Farnum Co., supra.*

This was a civil action by an attorney to collect for legal services which he had evaluated at $2,530. Concluding that the trial justice's award of $2,180 was excessive, this court held that if an attorney intends to base his bill entirely upon the reasonable value of his services, he should make clear to his client that the amount of work he is being called upon to perform could cause his fee to be disproportionate to the result sought to be achieved. This is so, we further held, because a client should have an opportunity to determine whether he desires to proceed.

In the case at bar, defendant argues, plaintiff's client's total assets consisted of a small farm worth not more than $15,000. Yet, she further argues, it is plaintiff's testimony that he performed more than $9,100 worth of services without having placed his client on notice that the legal fees involved might be out of all proportion to the value of his client's estate.

In *Higgins,* the benefit which would result to defendant, if his attorney successfully prosecuted the litigation for which he was engaged, could be measured in dollars by said attorney who, having in mind what he would charge for his services, could not help but be aware that the cost of

his services might be considered by his client as disproportionate to the result sought. In the instant case, that which plaintiff attorney might have achieved could not be measured in dollars. Rather, it involved legal status. Nevertheless, defendant would equate the result which might have been achieved in *Higgins* with the instant plaintiff's knowledge of his client's assets.

Assuming, without deciding, that this equating would have validity in an appropriate case, the record in the instant case, so far as we have been made aware, does not support defendant's hypothesis. She argues that plaintiff knew of his client's total assets but she does not point to where in the record such knowledge appears. In the absence of defendant pointing to that portion of the record from which it might be found that plaintiff was in fact aware of his client's limited assets, we will not presume that it was there for the trial justice to consider in the exercise of his independent judgment as to the reasonable value of plaintiff's services. In such circumstances, it cannot be said that the trial justice was clearly wrong in failing to consider the rule laid down in *Higgins* v. *J. B. Farnum Co., supra.*

The defendant's appeal is denied and dismissed, the order appealed from is affirmed and the case is remitted to the Superior Court for a new trial.

Motion for reargument denied.

*Fred Brosco, Robert T. Flynn,* for plaintiff.

*Isidore Kirshenbaum, Alfred Factor,* for defendant.