## Julia Gorman vs. Hand Brewing Company.

### FEBRUARY 25, 1907.

Present: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Master and Servant. Res Ipsa Loquitur. Negligence.*

Where intestate, a driver in employ of defendant, while properly driving a pair of horses harnessed to a loaded wagon, in the course of his employment was injured by being thrown from his seat while the horses were running away with the wagon-pole, which had broken from the wagon, caused, as plaintiff's testimony tended to prove, through imperfect welding of the iron, which work was done by defendant, the mere fact that it did so break is inferentially evidence of negligence on the part of defendant, thus presenting a *prima facie* case and casting the burden upon the defendant to rebut the presumption.

(2) *Evidence. Inherent Improbability of Testimony.*

While the positive testimony of a witness, uncontradicted and unimpeached either by other positive testimony or by circumstantial evidence, either intrinsic or extrinsic, can not be disregarded, yet a witness may be contradicted by the facts he states as completely as by direct adverse testimony, and it is not to be accepted as true, where it contains inherent improbabilities or contradictions which alone, or in connection with other circumstances in evidence, establish its falsity, merely because there is no direct testimony contradicting it.

Trespass on the Case for Negligence. Heard on exceptions of defendant after verdict for plaintiff in Superior Court, and exceptions overruled except on question of damages.

Dubois, J. This is an action of trespass on the case for negligence, brought, under the statute, by the widow of Jeremiah Gorman, to recover damages for the death of her husband, which, she alleges, was caused by the wrongful act, default or neglect of the defendant.

It appears that the plaintiff's husband, a strong, healthy man of the age of thirty-two years, a driver in the employ of the defendant, while properly driving a pair of horses harnessed to a loaded wagon, in the course of his employment, on the twenty-ninth day of March, 1904, received the injuries which caused his death by being thrown from the driver's seat of the wagon to the ground, while the horses were running away with

the wagon-pole, which had become broken and detached from the wagon, and which had probably struck and frightened the horses and caused them to run away.

After verdict for the plaintiff in the Superior Court the defendant duly made a motion for a new trial for the reasons hereinafter stated, which motion was denied by said Superior Court and the cause was brought to this court and heard upon the defendant's bill of exceptions based upon the following grounds:

That the verdict is against the law;

That the verdict is against the evidence;

That the damages awarded by the jury in said cause are grossly excessive and unjust;

That the defendant has discovered new and material evidence in said cause, which it had not discovered at the time of the trial thereof, and which it could not have discovered at said time by the exercise of reasonable care;

That the judge who presided at the trial of said case erred in certain of his rulings, to which exceptions were duly allowed, and that the counsel for the plaintiff made a statement in the nature of testimony, to which exception was duly allowed.

The verdict is not against the law.

Under the instructions given to the jury, which constituted the law governing them in the case, the jury was at liberty to find either for the defendant or for the plaintiff, according to the preponderance of the evidence as weighed by them. There is nothing in the verdict to indicate that the jury disregarded the instructions of the court.

The verdict is not against the evidence. The testimony for the plaintiff tended to prove that the breaking of the pole, which resulted in the injury and subsequent death of her husband, was caused by imperfect welding of the iron by which the pole was attached to the wagon, and that the work was done by the servants of the defendant in its blacksmith shop, and that the pole was made and fitted for said wagon by servants of the defendant. As poles do not usually become detached from wagons, while in ordinary use, through breaks of

that character and cause, and as the pole and wagon was an apparatus wholly under the control of the defendant, the mere fact that it did so break apart from the wagon is inferentially evidence of negligence on the part of the defendant. The plaintiff having thus presented a *prima facie* case, the burden was cast upon the defendant to rebut the presumption to the satisfaction of the jury.

The defendant offered evidence, by two witnesses, another driver and a helper in the employ of the defendant, who, in another wagon preceded the wagon driven by the plaintiff's husband, that prior to the time of, and about a mile and a half away from the place of, the fatal accident, the off side of the half-circle (so-called) that connected the pole with the axle of the wagon gave way, and that at the request of Gorman they went back to his wagon and assisted him to make temporary repairs by strapping the half-circle of the pole to the axle of the wagon with three lazy straps taken from the harness of the horses driven by Gorman, two straps being used on the off side and one on the nigh side, and that they then proceeded on their journey without further incident until the final break occurred. No evidence was introduced tending to strengthen or rebut this testimony relative to such repairs, or to prove that the wagons were or were not stopped at such time and place, except that the manager of the defendant testified that after the accident Gorman told him about the previous break and the repairs that had been made, and another witness testified that after the accident he saw one strap hanging down on the off side of the axle. The testimony of the manager as to the conversation with Gorman is not supported by any other witness, but is contradicted by a number of persons present at the time, including the doctor and nurse in attendance upon Gorman. And the testimony of the witness in regard to seeing the strap on the axle is not corroborated, but is contradicted by several other witnesses who were present at the time he claims to have noticed it, and who had equal opportunities to see what was in sight.

The jury not only found for the plaintiff, but answered in the negative the following special finding, prepared by counsel

for the defendant: " Had the half-circle on the right side broken and been repaired temporarily either by Gorman or to the knowledge of Gorman prior to the accident that resulted in Gorman's death? "

(2)　　The defendant objects to the verdict and special finding because in reaching such a result the jury completely ignored, disregarded, or discarded the positive testimony of the driver and helper as to the prior break and repairs, and calls our attention to our quotation in *Murray* v. *Pawtuxet Valley St. Ry. Co.*, 25 R. I. 209, at p. 212: " It is the general rule that where unimpeached witnesses testify distinctly and positively to facts which are uncontradicted, their testimony suffices to overcome a mere presumption."

We have found no better statement of the principle under consideration than is made by Mitchell, Justice, in *Anderson* v. *Liljengren*, 50 Minn. 3. He says: " The rule undoubtedly is that, where the positive testimony of a witness is uncontradicted and unimpeached, either by other positive testimony or by circumstantial evidence, either intrinsic or extrinsic, it can not be disregarded, but must control the decision of the court or jury. But a witness may be contradicted by the facts he states as completely as by direct adverse testimony. A court or jury is not bound to accept it as true merely because there is no direct testimony contradicting it, where it contains inherent improbabilities or contradictions, which alone, or in connection with other circumstances in evidence, satisfy them of its falsity."

Among the advantages that the jury always has over the court which is asked to review its finding is the opportunity given to weigh witnesses as well as their testimony. From the moment that a witness is called to the stand until he leaves it and is lost to view his physical and mental characteristics are subject to the analysis of twelve students of human nature, having different degrees of capacity, and more or less experience, who pass judgment upon him as well as his story.

In this case the jury took a view of the places where the accidents are said to have occurred; and, although this view was taken in October, 1905, and therefore at a different

season of the year from that in which the accident happened, and the condition of the roads was doubtless better, still the material composition, width, and grade of the streets were observable by them and were doubtless of value in the consideration of the evidence as to what transpired thereon.

The jury also had the benefit of an examination of the pole, wagon, harness, and lazy straps, and the testimony in explanation of the change in the circle of the pole by lengthening it since the accident. And after the arguments of counsel and the clear and correct charge of the court, found the verdict and special finding hereinbefore mentioned.

That the jury was warranted in so finding is clear if there are any improbabilities or contradictions in the testimony relating to the first accident which alone, or in connection with other circumstances, reasonably satisfied the jurymen of its falsity.

There is an inherent improbability in the story that one side of the half-circle broke without being immediately followed by a corresponding break on the other side. No claim is made that the break occurred while the wagon was at rest, as, for instance, from a kick by one of the horses, or by a weight falling upon it, or from any force suddenly applied to that side. On the contrary the inference is that, while this loaded wagon was being drawn over the rough road on that day in early spring, the horses pulled away one part of the end of the half-circle on the off side from its other part, which was shackled to the axle. If so, what would naturally be likely to happen? All the weight of the wagon and load and all the force and strength of the horses would instantly be transferred to the nigh side of the half-circle, which thus would be called upon to bear the strain to endure which the entire half-circle had just proved insufficient, with the probable result of an immediate break on that side. The story of a partial break in such circumstances assumes that a part is stronger than the whole.

The narrative of the temporary repairs by means of the lazy straps is no more probable. If the half-circle of the pole was strapped to the axle as tightly as it could be on the off side, and was strengthened by strapping the same as well as possible

on the nigh side, the effect must have been to draw the pole several degrees out of true towards the off side, so that when the horses attempted to overcome the inertia of the loaded wagon they were drawing towards their right side and were more likely to turn the wagon than to draw it forward, and all attempts made by the driver to counteract this tendency must have added greatly to the strain ordinarily imposed upon the half-circle and at that time endured by the two straps on the off side and the unbroken end of the half-circle and one strap on the nigh side.    The jury was asked to believe that this make-shift was sufficient to accomplish its purpose, and, in fact, did last while the wagon was being drawn, a distance of about a mile and a half, to the place where the final break occurred; and by the special finding the jury made its response.    It was a matter clearly within the province of the jury to determine, and there is nothing to indicate that the verdict, including the special finding, was the result of passion, prejudice, or any improper motive, on the part of the jury.

We are of the opinion that the jury erred in computing the amount of damages, and that the same is excessive and should not exceed the sum of ten thousand dollars.    A new trial will be granted for this reason unless the plaintiff shall remit the amount in excess of that sum.

The affidavits filed to support the claim of newly discovered evidence contain mostly cumulative or explanatory testimony which, by the exercise of reasonable diligence, could have been presented at the trial, and, moreover, is not, in our opinion, of a nature likely to affect the result.

The exceptions to the rulings of the presiding justice present no new questions of law, and we find no error in his rulings in these respects, therefore the exceptions are overruled.

The statement of counsel, to which the defendant took exception, was perfectly proper in the circumstances; in cross-examination a witness for the plaintiff had just denied that two men, whom he saw on Saturday, came from Mr. Hogan.    Mr. Hogan immediately admitted that they did, and said that he was surprised at the denial of the witness.

The defendant also excepted to the refusal of the presiding

justice to grant his motion for a new trial upon each of the following grounds:

That the verdict is against the law;

That the verdict is against the evidence;

Because the damages awarded are excessive, and for newly discovered evidence.

The exception that the damages awarded are excessive must be sustained, as hereinbefore decided, and the other exceptions, which we have considered and disposed of, must be overruled.

The presiding justice had the same opportunity that the jury had to satisfy himself of the credibility of the story told by the witnesses, and the fact that he was unwilling to disturb the verdict strengthens the presumption that it was correct.

Case remanded to the Superior Court for a new trial unless, within thirty days hereafter, the plaintiff shall file, in said court, her *remittitur* of all damages awarded in said case in excess of ten thousand dollars, in which case judgment shall be entered on the verdict so reduced.

*John W. Hogan and Philip S. Knauer*, for plaintiff.

*Lewis A. Waterman and John J. Fitzgerald*, for defendant.

