JOSEPH JACKOWITZ *et ux. vs.* ARTHUR P. DESLAURIERS *et ux.*

JULY 8, 1960.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

ROBERTS, J. This is a bill in equity wherein the complainants seek to restrain the respondents from entering

upon a certain parcel of real estate the title to which the complainants aver to be in them and from maintaining a hedge and fence thereon. The respondents filed an answer in the nature of a cross bill wherein they prayed that certain affirmative relief be granted them with respect to the parcel of land in question. After a hearing in the superior court, the trial justice entered a decree wherein he declared in substance that title to the real estate was in the complainants; that the respondents had an easement to maintain a cesspool thereon; that they should proceed forthwith to remove the hedge and fence; and that they be enjoined from further entry upon the land other than would be consistent with their easement. From that decree the respondents have appealed to this court.

It appears from the record that in 1947 the Leroy Realty Corporation, hereinafter referred to as the corporation, acquired a tract of land in the Riverside section of the city, formerly the town, of East Providence. This tract was subsequently platted as the Leroy Heights Plat and developed for residential uses. It further appears that at that time and until 1952 Leroy Hanson, a housebuilder, was president of the corporation.

It further appears that on February 18, 1948 the corporation conveyed a house and lot located on that plat to respondent Arthur P. Deslauriers, who shortly thereafter conveyed the property to himself and his wife. This lot was designated as lot 46 on said plat and is situated on the easterly side of Wingate Road. It is bounded on the south by lot 45, which is located at the northeast corner of Wingate Road and Sandra Court. Both lots are bounded on the east by lot 69, which is situated on the northerly side of Sandra Court. Lot 69 is the property of complainants, having been conveyed to them by the corporation on July 30, 1958.

It is not disputed that the respondent husband, who is a civil engineer by profession, took up residence in the

house on lot 46 early in 1948 and that in the spring of that year he was engaged by Hanson to make certain surveys on the plat concerning the location of the lot lines. In the course of such work said respondent ascertained that his house was located so close to the southerly line of lot 46 that he would be unable to build a garage and breezeway on the south side thereof. Neither is it disputed that thereafter, acting under the direction of Hanson, the respondent husband made a survey by which a long, narrow strip along the northerly line of lot 45 was incorporated into lot 46 and a similar strip along the westerly edge of lot 69 was incorporated into lot 45. These parcels, referred to in complainants' exhibit 3 and the transcript as parcel "A" and parcel "B," are not relevant to the issue here.

However, it is the further contention of said respondent that at the same time and under Hanson's direction he ran a survey line from the northeast corner of parcel "A" in a northeasterly direction to a point on the plat at the southwest corner of lot 48. Such line enclosed an irregularly shaped portion of lot 69 which lay immediately to the east of his own lot 46 and is referred to in the exhibit and the record as parcel "C." In his testimony Hanson disputes his participation in this transaction.

It is clear that for some time the respondent husband has treated parcel "C" as part of his own lot, extended his lawn into that parcel, and planted a hedge and erected a fence along the easterly line thereof. In his decision the trial justice found that parcel "C" was the property of complainants and on that ground granted the relief set out in the decree appealed from. The respondents, in pressing their appeal, contend that the trial justice erred, first, in finding that they had not acquired title to that parcel by adverse possession and, second, that there had been no acquiescence by complainants in the easterly line of parcel "C" as the boundary line between the properties sufficient to estop them from asserting that it is not the true boundary line.

The respondents' claim that they have acquired title to parcel "C" by adverse possession is, of course, made in reliance upon the provisions of general laws 1956, §34-7-1. That statute, in pertinent part, provides that when one claiming title to real estate "shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during the said time, claiming the same as his, her or their proper, sole and rightful estate in fee simple * * *" he will be held thereby to have acquired title to that land. The burden, therefore, is on the respondents to prove that they have for a period of ten years been in the uninterrupted, quiet, peaceful and actual seisin of the land in question. *Parrillo* v. *Riccitelli,* 84 R. I. 276, 279.

In this respect the respondent husband testified that when he took possession of the house on lot 46 in the spring of 1948 he began immediately to develop a lawn around it. He testified that to this end he had graded the lot and had spread topsoil and grass seed thereon, including in the area with which he so dealt that portion of lot 69 extending to the easterly line of parcel "C." He further testified that he had top-dressed, fertilized, mowed, and otherwise maintained the resultant lawn continuously from the spring of 1948 to the time of the hearing. According to his further testimony, he enclosed the disputed area, parcel "C," in the summer of 1950 by planting a hedge of flowering shrubs along the easterly line thereof.

The trial justice in his decision refers to the above-noted testimony, stating in part: "The Court does not feel that his evidence of date of starting to plant this area into lawn is reliable, but that it is more credible that he seeded it after he made some kind of physical boundary." It is clear from this language that he either disregarded or rejected the respondent husband's testimony as to the time when he began to exercise dominion over the parcel of land in dispute and concluded that such acts of dominion as were

involved in preparing and maintaining the lawn began after the hedge was planted in the summer of 1950. On that basis he concluded that respondents had not been in continuous possession of the parcel for the ten-year period required by the statute.

The respondent husband contends that the testimony given by him as to the time when he began to exercise dominion over the parcel in dispute was undisputed and urges that, therefore, under our long-established rule we should disregard the inferences drawn therefrom by the trial justice and draw from the undisputed testimony a conclusion other than that of the trial justice. *Pearson* v. *Bozyan*, 86 R. I. 311, 322, 134 A.2d 387, 392. We do not perceive that this is a case for an application of our rule that we will not be bound by inferences drawn from undisputed testimony by a trial justice but will ourselves in appropriate circumstances draw such other inference therefrom as may be reasonable. We are not confronted here with an inference drawn by a trial justice from undisputed evidence but with his disregard or rejection of positive direct testimony as to the date upon which the respondent husband began to exercise dominion over the parcel of land in dispute. We have scrutinized the transcript closely and have found nothing therein in the way of other positive testimony that contradicts such testimony.

It is the well-settled law in this state that a trier of facts must accept completely uncontradicted and unimpeached testimony as probative of the fact it was adduced to prove. In the case of *Gorman* v. *Hand Brewing Co.*, 28 R. I. 180, this court accepted the proposition that the positive testimony of a witness that remained uncontradicted and unimpeached could not be disregarded by the trial justice but must control the decision. However, the court made it clear that such testimony did not bind a trier of the facts merely because it was not contradicted by direct testimony. Such testimony may be impeached by improbability or contra-

diction inherent within it. It may also be impeached, the court took care to note, by the witness himself and the manner in which he testified. Concerning this the court stated at page 183: "Among the advantages that the jury always has over the court which is asked to review its finding is the opportunity given to weigh witnesses as well as their testimony." Clearly, a justice of the superior court sitting as a fact trier may impeach testimony otherwise uncontradicted and unimpeached on the basis of the observations which he made of the witness and the manner in which he testified.

This court has repeatedly recognized the rule concerning the binding effect of testimony that is uncontradicted and unimpeached. In *Walsh-Kaiser Co.* v. *Della Morte,* 76 R. I. 325, reiterating the rule that such testimony may be impeached by inherent improbability, we stated at page 330: "But the rule is quite different where the positive testimony of a witness is uncontradicted and unimpeached by other positive testimony or by circumstantial evidence, either intrinsic or extrinsic. Material testimony on a controlling issue that meets so rigid a test rarely occurs, but when it exists, as it clearly does in the instant case, it cannot be disregarded and will control the decision of the trier of facts." The rule has been recognized in *Somerset Realty Co.* v. *Shapiro,* 51 R. I. 417, and *Halliday* v. *Rhode Island Co.,* 42 R. I. 350.

In the instant cause we have the positive direct testimony of the respondent husband that he began to exercise dominion over the land in dispute in the spring of 1948. His testimony to that effect was not contradicted by any other direct positive testimony, although one of the witnesses who testified for complainants clearly had knowledge concerning said respondent's activities on the land at that time. Neither can we say that the testimony was impeached by some inherent improbability or by reason of its being inconsistent with established physical facts.

We consider as particularly significant the absence of any

statement by the trial justice in his decision that he considered this testimony impeached by reason of some extrinsic fact observed in the witness or in the manner in which he testified. We will not imply from a mere rejection or disregard of such testimony that a trial justice found it to be impeached by his observation of the witness or the manner in which he testified. A trial justice who relies upon that ground for the impeachment of such testimony should advert in some manner, however briefly, to his reason therefor.

It is our opinion that the testimony of the respondent husband that he began to exercise dominion over the parcel of land in question in the spring of 1948 was uncontradicted and unimpeached, and in that circumstance it was error for the trial justice to disregard or reject it. When such fact is accepted as proved and the pertinent rule of law is applied to the resulting fact situation, it becomes clear that the respondents have sustained the burden of establishing that they exercised dominion over the parcel of land in dispute for a period of time in excess of the statutory period, and that therefore, by operation of the statute, title thereto vested in them. Because of our conclusion, it is not necessary for us to consider the respondents' other reasons of appeal.

The respondents' appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court with direction to enter a new decree denying and dismissing the bill of complaint.

CONDON, C. J., dissents.

MOTION TO REARGUE.

JULY 26, 1960.

PER CURIAM. After our decision in the above cause was filed, the complainants by permission of the court presented a motion for leave to reargue, setting out therein certain reasons on which they base their contention that justice requires a reargument of the cause.

We have carefully considered those reasons and we are of the opinion that they are without merit.

Motion denied.

*Robert Brown,* for complainants.

*Vincent J. Chisholm,* for respondents.