241 A.2d 628.

ISABEL J. CHACE *et al. vs.* N. JAMES ANARUMO *et ux.*

MAY 9, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Roberts, C. J. This bill in equity filed on April 6, 1964, was brought to enjoin the respondents from trespassing upon two parcels of land located in the town of Little Compton, to which the complainants claim the right to immediate and exclusive possession. The respondents filed an answer and a cross bill, in which they alleged that the two tracts in dispute were conveyed to them by the administrator of the estate of their predecessor in title, who, they allege, had acquired title thereto by adverse possession pursuant to the provisions of G. L. 1956, §34-7-1. The cause was heard by a justice of the superior court sitting in equity, who on June 30, 1966, denied and dismissed the cross bill and entered judgment granting the injunctive

relief sought by the complainants. From that judgment the respondents prosecuted an appeal to this court.

It appears from the record that in 1898 respondents' predecessor in title, Alton B. Wilcox, purchased a tract of land that subsequently came to be known as the Wilcox farm and continued to occupy and work the farm until his death in 1963. It further appears that the tracts of land, title to which is in dispute, abut the Wilcox farm on the west and are known as the Otis Lake lot and the Snell Wood lot. It is not disputed that respondents had unsuccessfully negotiated with Wilcox for the purchase of the farm prior to his death. Subsequent to his death they purchased the farm from the administrator of Wilcox at a public auction held on August 21, 1963.

That record title to the wood lots under consideration is in complainants is not disputed. From the evidence it appears that in 1940 Dennis Arruda purchased the Otis Lake lot from a Lester F. Allen and Alice M. Rankin, the conveyance being by a quitclaim deed. In March 1952 Dennis Arruda conveyed the Otis Lake lot to Frank Arruda, who reconveyed it to Dennis on January 5, 1954. On April 15, 1955, the Otis Lake lot was conveyed by Dennis to the complainant, Isabel J. Chace. It further appears that the Snell Wood lot had been owned by George W. Snell for many years and that on March 10, 1952, he conveyed the tract to Alice T. Arruda, wife of Dennis Arruda. On April 15, 1955, Alice T. Arruda conveyed the Snell Wood lot to complainant, Isabel J. Chace.

The primary issue here is whether Wilcox during his lifetime had acquired title to the Otis Lake and Snell lots by adverse possession. The respondents so argue and contend that, therefore, the deed of the administrator conveying all of Wilcox's right, title, and interest in the farm passed to them whatever title he had in the Otis Lake and Snell lots. It appears, however, that the case was tried in the superior court on the assumption that the deed of the

administrator to respondents included within its description the land comprising the Otis Lake and Snell lots, for it is only in this court that for the first time complainants argue that the conveyance from the administrator to respondents did not include land comprising the Otis Lake and Snell lots. However, because we are persuaded that respondents did not sustain the burden of proving that Wilcox during his lifetime had acquired title to the lots by adverse possession, the question of the boundaries of the farm conveyed becomes immaterial.

In cases involving adverse possession, strict proof is required. *Sherman* v. *Goloski*, 95 R. I. 457, 188 A.2d 79. Adverse possession requires proof by a preponderance of the clear and positive evidence or, as was stated otherwise by us in *Finocchiaro* v. *Francescone*, 97 R. I. 371, 373, 198 A.2d 37, 38, "* * * by evidence that is unambiguous and affirmative in its character." We are unable to perceive that respondents met this burden of proof.

The statute upon which respondents rely provides that such title may be acquired by one who "* * * shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands * * * for and during the said time, claiming the same as his, her or their proper, sole and rightful estate in fee simple * * *." G. L. 1956, §34-7-1. This requires proof of actual possession of the property claimed and of acts of dominion over that property sufficient in law to vest title thereto in him. It is generally accepted that the possession required under the statute to confer title must be actual, open, notorious, hostile, under claim of right, continuous and exclusive. *Sherman* v. *Goloskie, supra.*

We are aware that respondents here urge that the particular land included in the two lots under consideration is wild and unimproved rural land and that under the rule as we stated it in *Sherman* v. *Goloski, supra,* the possession is sufficient if it has been maintained in the manner in

which owners of like land in similar locations make use thereof. As we said in that case, the test basically is that the use to which the land has been put is similar to that which would be made ordinarily of like land by the owners thereof. Conceding that this test is applicable here, we are unable to perceive in those circumstances that respondents satisfied the burden of proof imposed upon them to establish the acquistion of title by adverse possession.

In finding that respondents had not met the burden of proof, the trial judge stated: "* * * Neither the testimony nor the facts as shown by the testimony had that continuous dominion, and the open, notorious and continuous dominion that the law requires in cases such as the one in question." He went on then to conclude that "* * * Mr. Wilcox never claimed the twenty-two acres as his own, never exercised the dominion over the land or the two lots in question, as required under our law." We attach considerable significance to these statements because they disclose a recognition on the part of the trial justice of what, in our opinion, clearly appears upon an examination of the transcript, that is, a paucity of evidence tending to establish that the possession of Wilcox was sufficiently open, notorious, and continuous to satisfy the statute. In short, the trial justice rested his finding that the burden of proof had not been met primarily on the absence of such testimony from the record. It is settled that the findings of fact of a trial justice sitting in equity will not be disturbed by this court on appeal unless shown to be clearly wrong. *City of Warwick* v. *Del Bonis Sand & Gravel Co.*, 99 R. I. 537, 209 A.2d 227; *Cianciarulo* v. *Tarro*, 92 R. I. 352, 168 A.2d 719.

To meet the requirement of showing that the trial justice was clearly wrong, respondents urge that he overlooked evidence of acts of dominion on the part of Wilcox and misconceived certain uncontradicted, unimpeached evidence adduced by respondents to establish such acts of dominion.

They argue that the latter evidence, under the rule stated in *Jackowitz* v. *Deslauriers,* 91 R. I. 269, 162 A.2d 528, would be controlling on the basic issue. We cannot agree that the trial justice either overlooked or misconceived material evidence on the issue of the acquisition of title by adverse possession.

We have closely scrutinized his decision and are persuaded that he therein discussed fully the evidence bearing on the adverse possession of Wilcox. He noted particularly that such evidence of an exercise of dominion over the lots by Wilcox fails to establish that such acts of dominion were continuous and thus fails to establish one of the essential elements to be proved under the terms of the statute. This conclusion he did not reach on a rejection of the credibility of respondents' witnesses, but rather on his conclusion that the testimony, viewed in its broadest sense, fails to establish the necessary continuity for the statutory period of the possession and exercise of acts of dominion.

We turn to an examination of the transcript and direct our attention first to the evidence adduced to establish an exercise of dominion over the lots by Wilcox prior to the acquisition thereof in 1940 by Arruda. Evidence as to the first of such acts of dominion thereon was adduced through the witness Simmons, who testified that before he went into the army in 1917, he had cut wood for Wilcox on the land that is now identified as the Otis Lake lot. He testified further that after he returned from military service in 1919 or 1920, he had cut wood on the lot for Wilcox.

Another witness, Manchester, testified that he knew the location of the lot identified now as the Otis Lake lot and believed that it was the property of Alton Wilcox. He testified that during the winters of 1928 and 1929 he cut trees on the land in question, stating that such timber had been purchased in the form of standing trees by a Mr. Newton and that such trees as were to be cut were marked by Alton Wilcox. A close examination, however, of this

evidence in the record fails to disclose that the necessary acts of dominion over the land continued through the twenties. Obviously had such acts continued through the twenties, the statutory period would have run by 1928, and title would have vested in Wilcox by operation of law.

Upon further examining the transcript, it becomes clear that there is an absence of evidence establishing any open and notorious acts of dominion on the part of Wilcox during the thirties other than the testimony of the witness Carter, who testified somewhat vaguely that he had helped Wilcox to carry wood off that lot from 1937 to 1940. In short, we are persuaded from our examination of the record that it contains no evidence that indicates a continuity in the exercise of dominion over the two lots in question through the mid twenties on through the mid thirties.

There is an abundance of evidence tending to prove that after Arruda acquired title to the Otis Lake lot in 1940, he entered into possession thereof and openly and continuously exercised acts of dominion over it. It is to be conceded that there is also in the transcript testimony tending to establish that after 1940 Wilcox asserted ownership of the Otis Lake lot lying to the west of his house. However, when this evidence is considered in the light of the requirement that he prove open, notorious, and continuous possession and dominion over the lot, it is insufficient to prove that there was a continuous exercise by Wilcox of such dominion within the purview of the statute.

The record also discloses evidence that Wilcox admitted that ownership of the Otis Lake and Snell lots was in others. Both the witness Arruda and the witness Farias testified that when they were attempting to locate the boundaries of the Otis Lake and Snell lots, Wilcox pointed out with substantial accuracy the location of the boundaries of these lots and identified as the owners thereof persons other than himself. In short, there is considerable conflicting evidence as to what Wilcox did with respect to

these lots after 1940. It is to be conceded that there is testimony that he stated that he owned the lots and that he granted permission to certain witnesses to enter thereon to cut holly branches therein.

The trial justice, however, found on all the evidence relating to the period after 1940 that Wilcox had not exercised an open, hostile, notorious, and continuous dominion over the lots. It is our opinion that the trial justice was not clearly wrong in finding that after 1940 Wilcox had not exercised dominion over the lots in a degree sufficient to bring the case within the terms of the statute.

The respondents have vigorously argued that most of the evidence relating to the exercise of dominion on the part of Wilcox was uncontradicted and unimpeached and, therefore, was controlling on the issue of the sufficiency of the dominion to meet the requirements of the statute. In this they rely, as we have previously noted, on *Jackowitz* v. *Deslauriers, supra,* where we discussed the circumstances under which a trier of facts must accept completely uncontradicted and unimpeached testimony as probative of the facts it was adduced to prove. If we concede that the evidence to which respondents refer was uncontradicted and unimpeached within the purview of the rule stated above — and this may well be true of the evidence as to acts of dominion on the part of Wilcox occurring between 1917 and 1939 — it does not prove that the possession of Wilcox was continuous within the purview of the statute. Such evidence under the rule would be conclusive only as to those particular acts of dominion that took place, that is, the wood cutting that occurred shortly after World War I, in the winter of 1928 and 1929, and between 1937 and 1940. There is still no evidence that these acts of dominion were any more than episodic or possessed the essential continuous character that is required by the statute.

In concluding that the trial justice did not err, we are aware that considerable evidence was adduced on the prin-

cipal issue in the course of a proceeding in the court below that followed respondents' motion for a new trial on the ground of newly discovered evidence as is authorized under 60 (b) (2) R.C.P. The record discloses that after decision in the trial court and while the case was in this court pending appeal, respondents moved for a new trial on the ground of newly discovered evidence pursuant to rule 60 (b) (2). This court thereupon ordered the record remanded to the superior court for a determination of that motion. It must be conceded that the record relating to the hearing on this motion in the trial court is somewhat confused.

However, the ultimate decision of the trial justice, as it appears in the transcript, discloses that, whatever course the proceedings took, he was deciding the motion made under rule 60 (b) (2). He said: "* * * well, let's leave it this way; that the motion for a new trial on the ground of newly discovered evidence is denied; though for all intents and purposes the trial was held, the evidence submitted is not newly discovered. It could have been obtained by due diligence, and the fact was known in many cases to the defendant. He did not rebut the presumption that there has been a lack of diligence. The evidence that he submitted was not effective to change the result of the former trial; it attempted to merely affect the weight and credibility of the evidence or the witnesses."

This is entirely consistent with the obligation of a trial court passing upon such a motion. This obligation is stated in 7 *Moore's Federal Practice,* ¶60.23[4], p. 243 (2d ed. 1966), as: "* * * under Rule 60 (b) (2), the failure to produce the evidence at the trial must not have been caused by the moving party's lack of due diligence. The evidence must be such as was not and could not by the exercise of diligence have been discovered in time to present in the original proceeding. It must be of such a material and controlling nature as would probably induce a different conclusion, and not merely cumulative; be admissible and

credible; and must normally be of greater importance than merely to contradict or impeach a witness."

It is true that the trial justice did in his decision on this motion say: "* * * the court has granted defendant's motion for a new trial on the ground of newly discovered evidence." However, it is clear from the context in which this statement was made that the trial justice was simply saying that because he had passed upon the motion by actually hearing the witnesses through whom the newly discovered evidence would be adduced, he had in effect granted a new trial. He referred to the fact that the procedure engaged in was somewhat unorthodox but that he was himself persuaded that it did not constitute harmful error. We agree.

When the decision on the motion for a new trial under rule 60 (b) (2) is considered in this light, it becomes clear that the trial justice did not grant a new trial and then arbitrarily deny the respondents that relief. Further, we think that it was unnecessary for the trial justice, in passing on the evidence which was the subject matter of this motion, to consider it in the light of all of the evidence that had been adduced at the trial. Because we take this view, it is our conclusion that the trial justice did not err in denying and dismissing the respondents' cross bill and entering judgment for injunctive relief for the complainants.

The appeal of the respondents is denied and dismissed, and the judgment is affirmed.

*Dolbashian and Chappell, N. Jameson Chace,* for complainants.

*Graham, Reid, Ewing & Stapleton, Edward J. Regan,* for respondents.