459 F.2d 175
 20 Wage & Hour Cas. (BN 539, 20 Wage & Hour
Cas. (BN 727,
67 Lab.Cas. P 32,651, 68 Lab.Cas. P 32,719
 WHITE GLOVE BUILDING MAINTENANCE, INC., a corporation, and
Stewart Resnick, Appellants,
v.
James D. HODGSON, individually and as Secretary of Labor of
the United States of America, Appellee.
 No. 71-2125.
 United States Court of Appeals,
Ninth Circuit.
 March 16, 1972.
As Amended on Denial of Rehearing June 8, 1972.
 
 Loren R. Rothschild (argued), Daniel Fogel, of Bodle, Fogel, Julber & Reinhardt, Los Angeles, Cal., for appellants.
 Philip S. Malinsky, Asst. U. S. Atty. (argued), Robert L. Meyer, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty. and Chief, Civ. Div., Los Angeles, Cal., James D. Hodgson, Sec. of Labor of the U. S., John Mitchell, U. S. Atty. Gen., Washington, D. C., Altero D'Agostini, Reg. Sol., Daniel W. Teehan, Deputy Reg. Sol., U. S. Dept. of Labor, San Francisco, Cal., for appellee.
 Before ELY and GOODWIN, Circuit Judges, and CROCKER.* District Judge.
 ALFRED T. GOODWIN, Circuit Judge:
 
 
 1
 White Glove Building Maintenance, Inc., a janitorial service company, appeals a district court judgment dismissing its action to enjoin enforcement of a Decision and Order of the Secretary of Labor.
 
 
 2
 The controversy arises out of the fringe-benefit requirements of a wage order in a government contract awarded to White Glove for services at an Air Force base. Such contracts are governed in part by 41 U.S.C. Secs. 351-357, the Service Contract Act of 1965, 79 Stat. 1034. The statute requires the employer to furnish a certain level of health and retirement benefits, but permits him to discharge his obligation "by furnishing any equivalent combinations of fringe benefits or by making equivalent or differential payments in cash under rules and regulations established by the Secretary."
 
 
 3
 White Glove attempted to satisfy a ten-cent-an-hour health and welfare and a ten-cent-an-hour pension contribution for each employee by contributing those amounts to the union health, welfare and pension trust funds. This attempt was initially approved by the union, which was involved at the time in a labor dispute with White Glove. Because no bargaining agreement then existed between them, the scheme was not institutionalized in a contract. Nonetheless, the union officials agreed to cooperate with White Glove in administering a fringe-benefit plan equal to the union's own plan.
 
 
 4
 On January 10, 1968, White Glove distributed to its employees a letter informing them of the availability of medical and welfare coverage equal to benefits under the plan currently in effect for Local 399 employees.
 
 
 5
 For a time, the union trustees permitted White Glove to make the $0.20 per hour contributions to the union trust funds. On February 25, 1969, however, the trustees changed their minds and returned White Glove's contributions. White Glove then advised its employees in writing that Local 399 would no longer process their fringe benefit claims but that White Glove would continue to pay all claims under the same plan.
 
 
 6
 White Glove and Local 399 eventually entered into a collective-bargaining agreement, and payments to the union trust funds resumed. The union then offered to accept the employee contributions (of approximately $40,000) its trustees had previously refused, together with responsibility for any employee health-insurance claims incurred. White Glove, looking back over fourteen months of self-insurance with relatively few claims, declined to turn the funds over to the union. At this point, there was no complaint before the Department of Labor. The issue between White Glove and the union was not the sufficiency of White Glove's self-insurance plan, but, rather, who would get the windfall resulting from the favorable claim experience.
 
 
 7
 After White Glove refused to turn the money over to the union, the administrative action leading to the present appeal was taken. The hearing examiner, and ultimately the Secretary, found White Glove's plan fatally defective and ordered a money judgment equal to 20 cents an hour for every hour worked by all those employees who had not filed claims.
 
 
 8
 Ordinarily, administrative findings are entitled to great weight, but in this case there is not an adequate evidentiary basis for the Secretary's decision. There is no substantial evidence of bad faith on the part of White Glove. There is no evidence that White Glove ever refused to pay a claim or provide an employee a benefit required by the contract. The Secretary's basis for the substantial penalties ordered is simply that White Glove had the temerity to embark upon a program of self-insurance without first obtaining departmental approval.
 
 
 9
 The Secretary has pointed to no provision in the Act or regulations (29 C.F.R. Pt. 4) which precludes a self-insurance plan from qualifying as an equivalent fringe benefit. Indeed, 29 C.F.R. Sec. 4.170(b) suggests the contrary:
 
 
 10
 "* * * Where such a [third-party insurance] plan or [trustee] fund does not exist, a contractor must discharge his obligation relating to fringe benefits by furnishing either an equivalent combination of bona fide fringe benefits or by making equivalent payments in cash to the employees * * *."
 
 
 11
 There is evidence of certain defects and inefficiencies in the self-insurance scheme, but these relatively trivial defects do not justify the penalties imposed by the Secretary.
 
 
 12
 The evidence on the level of benefits actually paid was that the benefits exceeded those required by the contract. White Glove admitted that because of high turn-over among its workmen the written notice of the plan actually reached only about 60% of the employees. But there is no evidence that any employee was unaware of the plan or was prejudiced by lack of notice of its provisions.
 
 
 13
 The evidence shows only that inefficient distribution of notice of the self-insurance plan by White Glove may have contributed to the size of the windfall that resulted from the self-insurance scheme. (The same windfall would have gone to the union under its plan.)
 
 
 14
 In order to insure that no employee suffers an underpayment of compensation, the Secretary may properly order cash payments. 41 U.S.C. Sec. 352. He did so in this case. However, the evidence does not support the amount of payments ordered. The Secretary ordered that White Glove pay 20 cents an hour to those employees who worked between August 7, 1967, and the date on which the union again implemented its health, welfare, and pension plans, and who have received no benefits or filed no claim. That order should be modified so that White Glove is liable only for 20 cents an hour worked by each such employee until the end of the above-noted period, or until the employee's name appears on the January 10, 1968, or March 10, 1969, payroll lists, or until White Glove can prove that the particular employee had actual notice of the White Glove plan, whichever is sooner.
 
 
 15
 The finding of the hearing examiner that none of White Glove's employees was exempt as a supervisory employee is in accord with 41 U.S.C. Sec. 357(b) and 29 C.F.R. Sec. 4.156, and is supported by the evidence.
 
 
 16
 The recommendation of the Administrator that the Secretary of Labor take affirmative action to relieve White Glove from the application of 41 U.S.C. Sec. 354(a) is supported by the evidence.
 
 
 17
 The claim of employee Neomia Thompson, and any subsequent claims arising out of the above period noted, must be paid by White Glove.
 
 
 18
 As modified, the order is entitled to enforcement. The cause is remanded to the district court to permit the proceedings necessary to implement these modifications. Upon a showing that the Secretary has made an order in keeping with the foregoing modifications, the action should be dismissed. Interest is payable on all sums the Secretary orders White Glove to pay.
 
 
 19
 Remanded for further proceedings.
 
 
 
 *
 The Honorable M. D. Crocker, United States District Judge for the Eastern District of California, sitting by designation