WHITE GLOVE BUILDING MAINTE-
NANCE, INC., a corporation, and
Stewart Resnick, Plaintiffs-Appel-
lants,

v.

Peter J. BRENNAN, individually and as
Secretary of Labor of the United
States of America, Defendant-Appel-
lee.

No. 73–2929.

United States Court of Appeals,
Ninth Circuit.

May 29, 1975.

Loren R. Rothschild, Los Angeles, Cal.,
for plaintiffs-appellants.

William D. Keller, U. S. Atty., Philip
S. Malinsky, Asst. U. S. Atty., Los Ange-
les, Cal., for defendant-appellee.

OPINION

Before ELY, TRASK and SNEED,
Circuit Judges.

**1272**

TRASK, Circuit Judge:

The district court affirmed the Department of Labor's finding that appellants had failed to meet their burden of proof on a factual issue before the Department. Appellants seek reversal, contending that there is no substantial evidence in support of the Secretary's determination.

This case is before the court for the second time. In the first proceedings the Department of Labor found that appellants were liable to their employees for underpayments of pension and health and welfare fringe benefits that were required by the Service Contract Act of 1965, 41 U.S.C. § 351 et seq. The Secretary ordered White Glove Building Maintenance, Inc. [White Glove] to pay 20 cents an hour to those employees who worked for White Glove between August 7, 1967, and the end of April 1969, and received no benefits or filed no claim under the program regardless of whether they received notice of the benefit plan. The district court affirmed. On appeal, this court found that the evidence did not support the Department's determination of the amount of underpayment. The court modified the order ". . . so that White Glove is liable only for 20 cents an hour worked by each such employee until . . . [the date on which White Glove ended its management of the benefit program] . . ., or until the employee's name appears on the January 10, 1968, or March 10, 1969, [the dates on which White Glove distributed letters to its employees explaining the program] payroll lists, or until White Glove can prove that the particular employee had actual notice of the White Glove plan, which ever is sooner."

*White Glove Building Maintenance, Inc. v. Hodgson,* 459 F.2d 175, 178 (9th Cir. 1972).

On remand, the district court sent the case back to the Department of Labor. The Secretary and White Glove reached agreement on the amount of underpayment as to all employees except for 41 who were employed after January 10, 1968, up to April 1969, but were not employed on March 10, 1969. Before an administrative law judge White Glove attempted to prove that these 41 employees had actual notice of the benefit plan. White Glove offered into evidence letters of January 10, 1968,[1] and March 10, 1969, in which White Glove informed its employees of the benefit program. It also introduced into evidence a transcript of the testimony of Mr. Resnick, the president of the company. This evidence had been introduced in the original proceedings and did not determine the issue whether interim employees had received actual notice. The only new evidence offered was the testimony of Mayer Immerman, a White Glove supervisor in charge of personnel matters. He testified that he posted the January 10, 1968 and March 10, 1969 letters on the bulletin board of his office and that they remained posted throughout the period in question. The entire work force would go through his office in any one month period and look at the board. Immerman also stated that he informed all new employees during this period of the benefit program by orally explaining it to them and directing them to the letters on the bulletin board. This testimony, if given credence, would establish that the 41 employees had actual notice. White Glove did not present the testimony of any of these 41 employees. The Government presented no evidence.

The administrative law judge found that the "evidence adduced by the respondent at said hearing was not of such certainty, credibility and probative value to evidence the date when or that any particular employee had actual notice of

---

1. There is some confusion in the record as to the date of the January 1968 letter. It was twice referred to as a letter dated "January 2, 1968." C.T. 110, 141. The letter itself was introduced into evidence, C.T. 81, and shows that it was dated January 10, 1968. C.T. 110. The testimony makes clear that the correct date was January 10, 1968. The actual date is not critical to the issues before the court.

the *White Glove* medical insurance plan . . . ." The Assistant Secretary of Labor affirmed this decision, and the district court affirmed.

On review under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.,* this court and the district court

". . . are entitled only to determine if the Secretary's decision is arbitrary or capricious or unsupportable by substantial evidence, considering the record as a whole." *Multiple Use, Inc. v. Morton,* 504 F.2d 448, 452, (9th Cir. 1974).

A district court's finding that there is substantial evidence with no elucidation is of no help to this court. *Id.* In this case, the district court merely repeats the administrative law judge's finding and states that there is substantial evidence to support it.

■■ The broad question presented is whether a factfinder may disregard the uncontradicted testimony of a witness. In *Dickinson v. United States,* 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953), the local Selective Service Board, as factfinder, denied an exemption contra to the oral and documentary evidence presented by the registrant that he was regularly engaged in his calling as a minister. The Court stated that the "dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice." *Id.* at 397, 74 S.Ct. at 158. However, in *NLRB v. Walton Mfg. Co.,* 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962), the Court reversed the Fifth Circuit's determination not to enforce a National Labor Relations Board order requiring reinstatement. The decision was predicated on a rule that an employer's statement under oath before a hearing examiner is to be believed unless it is impeached or there are circumstances that raise doubts as to credibility. The Court implied that a factfinder may disbelieve a witness and find a fact opposite to what the witness is saying based solely on the witness' credibility. *Id.* at 408, 82 S.Ct. 853.

Our own circuit has also not been entirely consistent on the subject. *Ramos v. Matson Navigation Co.,* 316 F.2d 128, 132 (9th Cir. 1963); *Joseph v. Donover Co.,* 261 F.2d 812, 824 (9th Cir. 1958); *Yip Mie Jork v. Dulles,* 237 F.2d 383, 385 (9th Cir. 1956); *NLRB v. Howell Chevrolet Co.,* 204 F.2d 79, 86 (9th Cir.), *aff'd,* 346 U.S. 482, 74 S.Ct. 214, 98 L.Ed. 215 (1953). In the earliest of the four cases there had been testimony on both sides; Judge Pope spoke for the court and said:

"Respondent maintains that the trial examiner was obliged to accept as true statements made by its own witnesses when those statements were not contradicted. It says: 'It is well settled law that where a witness' testimony is not contradicted, a trier has no right to refuse to accept it.' This is an ancient fallacy which somehow persists despite the courts' numerous rulings to the contrary. It overlooks the significance of the carriage, behavior, bearing, manner and appearance of a witness,—his demeanor,—when his testimony is given orally in the presence of the trier of facts." *NLRB v. Howell Chevrolet Co., supra* at 86.

The case is a little different from the one here inasmuch as the court was directly speaking to the asserted rule that a party is bound by the statements of its own witnesses. Furthermore, there was testimony both ways.

In *Yip Mie Jork* we spoke more conservatively, saying:

"A court may reject evidence, but it may not do so arbitrarily. This court has on numerous occasions held that the trier of fact need not accept uncontradicted testimony when good reasons appear for rejecting it, such as the interest of the witness, and improbabilities and important discrepancies in the testimony. However, when uncontradicted testimony has been rejected *without* good reason, we have reversed. E. g., Gung You v. Nagle, [34 F.2d 848 (9th Cir. 1929)]; Louie Poy Hok v. Nagle, 9 Cir., 1931, 48 F.2d 753." 237 F.2d at 385.

In *Joseph v. Donover Co.*, 261 F.2d 812, 824 (9th Cir. 1958), we said:

"Irrespective of the fact there was *conflicting* evidence, we point out that in this Circuit (as in others) the rule is that the trier of fact is at liberty within bounds of reason to reject entirely the uncontradicted testimony of a witness which does not produce conviction in his mind of the witness' testimony. . . . Of course a judge may not reject uncontradicted evidence arbitrarily. The reasons given by the trial judge in this case for his rejection of Joseph's testimony clearly demonstrate he did not act arbitrarily, but that his conclusion was based upon improbabilities and important discrepancies he found in Joseph's testimony."

The cases from other jurisdictions which have passed upon the question arrive at substantially the same result as in *Joseph v. Donover Co., supra.* The Supreme Court of Rhode Island in *Laganiere v. Bonte Spinning Co.*, 103 R.I. 191, 236 A.2d 256, 258 (1967), said in speaking of the effect of uncontradicted testimony which had not been discredited:

"Under the rule in Gorman v. Hand Brewing Co., 28 R.I. 180, 66 A. 209, many times affirmed, evidence of this character is ordinarily conclusive upon the trier of facts. The *Gorman* rule, however, is not without its exceptions and qualifications. Thus, for example, positive uncontroverted testimony may be rejected if it contains inherent improbabilities or contradictions, which alone, or in connection with other circumstances, tend to contradict it. Walsh-Kaiser Co. v. Della Morte, 76 R.I. 325, 69 A.2d 689; Somerset Realty Co. v. Shapiro, 51 R.I. 417, 155 A. 360. Such testimony may also be disregarded if it lacks credence or is unworthy of belief, Mott v. Clarke, 88 R.I. 257,

262, 146 A.2d 924, 926; Jackowitz v. Deslauriers, 91 R.I. 269, 162 A.2d 528, especially if the testimony is that of a party to the litigation or of an interested witness. Michaud v. Michaud, 98 R.I. 95, 200 A.2d 6. Rejection on credibility grounds may not, however, be arbitrary or capricious, nor may it ‘ * * * be left to the whim of a trier of fact,’ Michaud v. Michaud, supra, at 99, 200 A.2d at 8. Moreover, a trier of fact who disregards a witness's positive testimony because in his judgment it lacks credibility should clearly state, even though briefly, the reasons which underlie his rejection. Jackowitz v. Deslauriers, supra, at 276, 162 A.2d 528 at 531."

*See also Chesapeake & Ohio Ry. Co. v. Martin*, 283 U.S. 209, 215–19, 51 S.Ct. 453, 75 L.Ed. 983 (1931); *Nicholas v. Davis*, 204 F.2d 200, 202 (10th Cir. 1953); *In re Schade's Estate*, 87 Ariz. 341, 351 P.2d 173, 178 (1960).

Here the administrative law judge did not point out any inherent improbability in Immerman's testimony. It was in fact completely logical and consistent. His memory appeared to be excellent considering the fact that he was called upon on December 7, 1972, to identify by name some 41 janitorial employees whom he had hired over a period beginning in 1968 and ending in June 1971, and he could remember all but nine. Nor did he carry an interest in White Glove in any manner since he terminated his employment with the company in June of 1971.

He first testified generally as to his employment practices stating that he personally interviewed every employee and not only directed their attention to the posted notices but also explained the company medical plan and benefits to each new employee.[2] He then testified

---

2. Even though there were nine whom he could not recall by name, he stated that all of them looked at the bulletin board.

"Q. Do you think that most employees looked at the bulletin board?
"A. Yes, sir, they had to.

"Q. Could you state with certainty that every employee looked at the bulletin board?
"A. Yes, I could." C.T. 54.

as to each such employee by name, identifying all but nine by name and discussing the circumstances of hiring, including the fact that he had called the attention of that employee to the company paid medical benefit plan.[3] He also stated that he pointed out to each new employee the January 10, 1968 and March 10, 1969 letters describing the health and welfare plan, which he had posted on the bulletin board. None of those employees were then working for White Glove, and none were produced as witnesses. Both Resnick, the president, and Immerman identified the letters, and copies were introduced into evidence. The Government put on no witnesses at all and introduced no evidence.

It is clear that the testimony of Mr. Immerman on its face establishes that actual notice was given to each of the employees in question. His testimony is clear, positive and unimpeached.[4]

It appears from an examination of the record and statements of counsel that both counsel and the administrative law judge were proceeding on an erroneous interpretation of the standard of proof required by this court in its prior opinion. There we remanded ". . . until White Glove can prove that the particular employee had actual notice of the White Glove plan . . . ." Counsel in his remarks to the administrative law judge and in his brief after the hearing interprets this language as *requiring* proof whether or not a *"particular* employee [of the 41 involved] had *actual* notice of the White Glove plan" (emphasis by counsel), and thus the witness must state the actual date he interviewed a particular employee and the details of the notice given or actually produce former employees.

Further evidence of this approach appears from the statements of counsel for the Government at the end of his cross-examination of Mr. Immerman during which the witness had repeated the same statements he had made on direct examination.

"MR. ROTHSCHILD: I don't understand the point of your question. He has already testified that he talked to each of those people. I don't understand what you are asking him that is different, that hasn't already been asked.

"MR. TEEHAN: I am asking—I am trying to find out one particular employee that he talked to. I can't call 75 people to come in and either verify that this is true what he says or take issue with it.

"MR. ROTHSCHILD: As you know, our company no longer owns this company. None of these people work for us.

"MR. TEEHAN: But we would have to bring all 75 of them in. We are playing a guessing game.

"JUDGE BURROW: Let's proceed on.

"MR. TEEHAN: I have no further questions.

"I am trying to find a particular employee pursuant to the Court of Appeals statement." C.T. 72–73.

The administrative law judge appears to have been laboring under the same construction of the mandate of the remand as stated in our opinion. He found that,

". . . the evidence adduced by the respondents at said hearing was not of such certainty, credibility, and probative value to evidence the date when or that any particular employee had actual notice of the *White Glove* medical insurance plan; in this connection there was no written notice deliv-

---

**3.** For example:

"Q. Did you hire a Gladys Lewis?
"A. Yes, I remember her.
"Q. Did you tell her at the time you hired her that there was a company paid medical benefit?
"A. Yes." C.T. 48.

**4.** Some corroboration is furnished by Mr. Resnick who had testified earlier that Mr. Immerman had "handed them out with the paychecks and then posted them on the bulletin board." Mr. Immerman did not remember handing them out but did testify positively about posting them and calling the attention of each employee to them.

ered to any of the 41 employees and the project manager's testimony referred to a number being illiterate. It could not be expected that the illiterate could read the bulletin board and they had nothing in writing to take home and have others read and interpret for them. The respondents thus failed to meet the burden imposed upon them by the Court of Appeals." C.T. at 183.

If the findings of the judge were designed to say that nothing but written notice "to take home" would suffice, such a finding is clearly incorrect. Written take-home notice is not required. The written notice on the bulletin board was called to the attention of all and explained to those who could not read. The statement as to credibility and probative value does not appear to refer to demeanor evidence but appears to be directed to the court's belief that the evidence must have been given in proof of "the date when or that any particular employee had actual notice." In other words, Mr. Immerman's testimony as to notice given by him to each individual was not sufficiently specific, particularized or corroborated by the employee himself, to suffice under the terms of the remand. We simply do not read the terms of the remand to impose such a restrictive quantum of proof. We therefore hold that the testimony of White Glove presented by the documents, the letter exhibits, the recorded testimony of Mr. Resnick, and the live testimony of Mr. Immerman was sufficient to establish a strong prima facie case in the absence of contradiction or impeachment, and there was none.

The rejection of this evidence by the administrative law judge without a detailed explanation of his reasons for so rejecting was therefore improper as being arbitrary, although unintentionally so. *Joseph v. Donover, supra; Laganiere v. Bonte Spinning Co., supra.* We have the "definite and firm conviction that a mistake was committed . . . ." *Sessions, Inc. v. Morton,* 491 F.2d 854, 858 (9th Cir. 1974).

The judgment of the district court in affirming is reversed upon the same grounds with directions to remand to the Secretary to enter judgment in favor of appellants.